J.S24038/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
                    Appellee :
:
          v. :
:
:
CHRISTOPHER JOHN PROLENSKI, :
:
                    Appellant : No. 1860 WDA 2013

Appeal from the Judgment of Sentence November 18, 2013
In the Court of Common Pleas of Fayette County
Criminal Division No(s).: CP-26-CR-0002315-2012

BEFORE: BOWES, JENKINS, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED JANUARY 13, 2015**

Appellant, Christopher John Prolenski, appeals from the judgment of sentence of five to twelve years' imprisonment, imposed after a jury found him guilty of, *inter alia*, burglary and robbery.[1] Appellant claims the evidence was insufficient to sustain the convictions, the trial court erred in overruling his objection to the Commonwealth's closing argument, and the Commonwealth failed to disclose a police report. We are constrained to affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3502(a)(1), 3701(a)(1)(i).

We summarize the evidence adduced at trial. On September 26, 2012, shortly after 12:00 p.m., the complainant, Carol Lowther, returned to her home and found it had been ransacked. When she yelled out to check if someone was in the home, a man approached her from behind, twisted her arm around her back, and placed a screwdriver against her abdomen. The individual stated he would kill her if she did not give him what he wanted. The complainant struggled with the individual and was able to turn around and face him. She saw his face from a distance of approximately one foot. Her initial impression of the individual was "[j]ust tall and skinny, a white person." N.T., 11/5/13, at 22. He was wearing a dark colored sweatshirt with the hood over his head. *Id.* at 21. She broke free, ran to a neighbor's house, and called 911. The two shirts complainant was wearing at the time were torn, and she suffered a dislocated shoulder, as well as a scratch on her abdomen.

Pennsylvania State Trooper Douglas E. Urey responded to the 911 call and talked to the complainant. The complainant described the individual as a white male with dark hair, approximately 5'10" tall with a medium build. She stated she noticed an unfamiliar red Mustang parked near a neighbor's home before the incident. Trooper Urey collected the complainant's shirts as evidence. Several items located inside and outside the complainant's home were also taken as evidence.

Pennsylvania State Trooper Joseph Michael Timms was assigned to investigate the case. He interviewed the complainant on September 27, 2012, the day after the incident, and obtained her description of the individual. Trooper Timms then selected suspects from the area based on the complainant's description. He compiled two photographic arrays, each containing eight pictures. The first array contained a picture of a suspect, Seth Annis.[2] The second array contained a picture of Appellant.

On October 30, 2012, Trooper Timms met the complainant at her home and showed her the arrays. The complainant did not identify any of the photographs in the first array. According to Trooper Timms, he then showed her the second array, at which time she pointed at Appellant's picture and stated, "Oh my God, that's him. I am going to be sick." *Id.* at 60. She became nauseous and went to the bathroom. When she returned, she again identified Appellant as the assailant. She had not seen Appellant before the incident.

Trooper Timms filed a criminal complaint against Appellant on November 19, 2012, and arrested him the following day, November 20th. Appellant waived his *Miranda*[3] rights and denied being involved in the incident. According to Trooper Timms, Appellant asked if there was

---

[2] On cross-examination, Trooper Timms stated Annis owned a red Mustang. No evidence established that Appellant owned a red Mustang.

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

fingerprint evidence and stated he "would get an alibi because he wasn't there." *Id.* at 63.

A jury trial was held on November 5 and 6, 2013. The Commonwealth presented the testimony of the complainant, Trooper Urey, and Trooper Timms recounting the above-stated events. The Commonwealth did not present any forensic evidence. Appellant, in turn, presented an alibi defense and testified on his own behalf that he was working on the day of the crimes. Two witnesses testified in corroboration of Appellant's alibi, namely, Andrew Coliny, Appellant's girlfriend's father, for whom he was working, and the homeowner who hired Coliny to demolish her kitchen. The jury, on November 6, 2013, found Appellant guilty of the above-stated crimes and related offenses.

On November 18, 2013, the trial court sentenced Appellant to an aggregate five to twelve years' imprisonment. Appellant did not file post-sentence motions but timely filed a notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement.

Appellant presents the following questions for review:

> WHETHER THE EVIDENCE WAS INSUFFICIENT TO FIND THE APPELLANT GUILTY BEYOND A REASON[A]BLE DOUBT OF THE CRIMINAL CHARGES WHEN APPELLANT PRESENTED AN ALIBI DEFENSE?
>
> WHETHER THE PROSECUTION MADE IMPROPER STATEMENTS IN CLOSING ARGUMENT?
>
> WHETHER THE COURT ERR[ED] IN ALLOWING TROOPER UREY TO TESTIFY TO TROOPER'S REPORT WHEN DEFENSE

COUNSEL DID NOT RECEIVE THE REPORT PRIOR TO TRIAL?

Appellant's Brief at 7.

Appellant first claims the evidence was insufficient to sustain his convictions because the complainant's identification contradicted his alibi evidence and, therefore, was unworthy of belief and unreliable. In support, Appellant relies on *Commonwealth v. Bennett*, 303 A.2d 220 (Pa. Super. 1973). Appellant's Brief at 12-13. According to Appellant, no probability of fact that he committed the crimes could be drawn from the evidence. *Id.* at 13. He thus requests that his convictions be reversed or, in the alternative, that a new trial be granted. *Id.* at 15. No relief is due.

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. . . . Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 954 A.2d 1194, 1196-97 (Pa. Super. 2008) (citations omitted and punctuation omitted).

- 5 -

"An alibi is a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." *Commonwealth v. Hawkins*, 894 A.2d 716, 717 (Pa. 2006) (citation and punctation omitted). The defense, if established, permits a jury to acquit the defendant if the "alibi evidence, even if not wholly believed, raises a reasonable doubt of his presence at the scene of the crime at the time of its commission and, thus, of his guilt." *Id.* at 718 (citation and punctuation omitted) (discussing jury instruction regarding alibi defense).

This Court has held that a complainant's identification of the defendant alone provides sufficient evidence to rebut an alibi defense. *Commonwealth v. Brison*, 618 A.2d 420, 422-423 (Pa. Super. 1992). Similarly, we have held that a positive identification by the complainant provides sufficient basis to establish the identity of a defendant as the perpetrator of the offenses charged. *Commonwealth v. Patterson*, 940 A.2d 493, 502 (Pa. Super. 2007).

As noted above, Appellant relies on our decision in *Bennett*. In *Bennett*, the defendant was found guilty of receiving stolen property, an automobile, based on the following facts:

> [The d]efendant had been a passenger in the stolen automobile while it was being driven by one Harry Jones. Later [the defendant,] had been found driving the vehicle in Philadelphia with Jones as a passenger. Jones, after denials, confessed to the automobile's theft and it was on

- 6 -

his testimony that the Commonwealth relied in its proof of charges against [the] defendant. . . .

Jones (who had been contradictory with respect to his own perpetration of the larceny) sought to implicate the defendant by giving several wholly different, conflicting and inconsistent versions of when and how he had told her that the car had been in fact stolen by him. On a previous occasion Jones had denied he had ever conveyed to [the] defendant knowledge of the car's theft. With each new version Jones would recant the previous one and protest that the newest version was in fact the true one.

*Bennett*, 303 A.2d at 220-21.

On appeal, the defendant in *Bennett* challenged the sufficiency of the evidence. This Court agreed that Jones' testimony was "so inconsistent and contradictory as to be insufficient to support a finding of her guilt" for receiving stolen property. *Id.* at 220. We reasoned:

This situation presented the jury not with a mere conflict or contradiction in testimony which was reasonably reconcilable by them, but a situation falling within the rule: '. . . a case should not go to the jury where the party having the burden offers testimony of a witness, or of various witnesses, which is so contradictory on the essential issues that any finding by the jury would be a mere guess . . . When the testimony is so contradictory on the basic issues as to make any verdict based thereon pure conjecture the jury should not be permitted to consider it[.]'

*Id.* at 221 (citation omitted). We thus reversed the defendant's conviction. *Id.*

The Pennsylvania Supreme Court, in *Commonwealth v. Farquharson*, 354 A.2d 545, 550 (Pa. 1976), subsequently limited

**Bennett**. The **Farquharson** Court discussed the appropriate standard of review governing a challenge to the sufficiency of the evidence as follows:

> 'On appellate review of a criminal conviction, we will not weigh the evidence and thereby substitute our judgment for that of the finder of fact. To do so would require an assessment of the credibility of the testimony and that is clearly not our function.'
>
> This concept, however, must be distinguished from an equally fundamental principle that a verdict of guilt may not be based upon surmise or conjecture. Following this principle, courts of this jurisdiction have recognized that where evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding.

**Id.** at 550 (citations omitted). The Court concluded, "The **Bennett** principle is applicable only where the party having the burden of proof presents testimony to support that burden which is either so unreliable or contradictory as to make any verdict based thereon obviously the result of conjecture and not reason." **Id.**

Instantly, the principal issue at trial was whether Appellant was the perpetrator of the crimes. The Commonwealth relied on the identification of Appellant by the complainant. The complainant testified she managed to wrestle herself away from the perpetrator and see his face from a distance of one foot. N.T., 11/5/13, at 21-22. She provided a description of the assailant to Trooper Urey shortly after the incident. **Id.** at 48. One month later, she later identified Appellant from a photo array without hesitation.

*Id.* at 31, 60. She again identified Appellant at trial with no suggestion of uncertainty or qualification. *Id.* at 32.

Based on the foregoing, we discern no merit to Appellant's argument that the Commonwealth's evidence was so contradictory on the issue of his identification as the perpetrator that he was entitled to relief under *Bennett*. *See Farquharson*, 354 A.2d at 550. Rather, in light of the complainant's unequivocal and unwavering identifications of Appellant, the jury was entitled to reject Appellant's alibi and mistaken identity theories and resolve conflicts in the evidence.[4] *See Brison*, 618 A.2d at 423. Thus, Appellant's challenge to the sufficiency of the evidence warrants no relief.

Appellant also argues that his alibi evidence, which was corroborated by two witnesses, should be entitled such greater weight than the complainant's identification testimony that the latter must be deemed unreliable. We also note that the complainant's identification implicating him

---

[4] We note that eyewitness identification is arguably one of the most powerful, but least reliable, forms of evidence. *See generally Commonwealth v. Walker*, 92 A.3d 766, 779 (Pa. 2014). The hazards of "inaccurate, but honestly held recollections" when making an identification are well-documented. *See id.* We are mindful that the complainant here was not familiar with Appellant, had but a brief opportunity to view the assailant's face during the attack, and identified Appellant from a photographic array more than one month after the incident. However, we are bound by our standard of review, which does not permit this Court "to ask itself whether **it** believes that the evidence at the trial established guilt beyond a reasonable doubt." *Commonwealth v. Ratsamy*, 934 A.2d 1233, 1235 (Pa. 2007) (citation and punctuation omitted).

in the crimes was not corroborated by any physical or forensic evidence. As suggested above, however, these arguments challenge the weight, not the sufficiency, of the evidence. *See Patterson*, 940 A.2d at 502; *see generally Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (distinguishing standards relevant to reviewing sufficiency and weight of evidence challenges).

To the extent Appellant seeks a new trial based on the weight of the evidence, our review reveals no indication that Appellant raised a weight of the evidence claim in the trial court. *See* Pa.R.Crim.P. 607(A) (requiring "[a] claim that the verdict was against the weight of the evidence . . . be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion"). Moreover, Appellant's brief does not contain a statement of the place of raising such issue. *See* Pa.R.A.P. 2117(c), 2119(e). Therefore, Appellant has waived his weight of the evidence claim, and we are precluded from considering whether he was entitled to a new trial. *See Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009).

Appellant's next challenges the following portion of the prosecutor's closing argument:

> You also heard about DNA. This is not CSI Miami or New York. I like those shows the same as everyone else. They are entertaining, but that's what they are, they are entertaining.

- 10 -

In real life, DNA evidence is much different than it is on television.  As you heard, I believe on redirect from Trooper Timms, these items weren't sent to the lab.  The lab typically doesn't do DNA analysis when you already have a suspect identified.  The primary purpose in real life of law enforcement to do DNA analysis is to try and to ascertain . . . .

N.T., 11/6/13, at 77.  Appellant objected, noting the trial evidence did not explain why DNA tests were not conducted.  *Id.*  The prosecutor responded that Trooper Timms explained his decision not to seek DNA testing.  *Id.*  The court overruled Appellant's objection, stating the jury would determine whether the argument was supported by the trial evidence.  *Id.*

Appellant presently asserts the trial court erred in overruling his objection because the prosecutor's argument lacked an adequate basis in the trial evidence or legitimate inferences therefrom.  Appellant's Brief at 17-18.  He contends the prosecutor violated his professional responsibilities by advancing an unsupported argument.  *Id.* at 16-17.  No relief is due.

The principles governing our review are well settled:

[T]he trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration.  Consequently, the court abuses its discretion if, in resolving the issue for decision,

it misapplies the law or exercises its discretion in a manner lacking reason.

*Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009) (citation omitted).

With respect to closing arguments, the Pennsylvania Supreme Court has stated:

A prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments. Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks. Any challenge to a prosecutor's comment must be evaluated in the context in which the comment was made.

*Commonwealth v. Burno*, 94 A.3d 956, 974 (Pa. 2014) (citation and quotation marks omitted). Moreover,

It is well settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence. Further, prosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. Prosecutorial misconduct is evaluated under a harmless error standard.

*Judy*, 978 A.2d at 1020 (citation omitted).

After reviewing the trial transcript, we agree that the Commonwealth did not present any evidence explaining why DNA tests were not performed. Nevertheless, in the context of the closing arguments as a whole, the prosecutor's statement attempted to focus the jury's attention upon the

strength of the complainant's identification and away from the lack of any objective evidence corroborating the identification. Such an argument falls within the bounds of zealous advocacy granted to the prosecutor and responded to Appellant's arguments emphasizing the absence of forensic evidence. *See id.* at 1020, 1022-23. Moreover, even if we were to conclude that the prosecutor's misstatement of the record constituted misconduct, we discern no basis to conclude the jury was incapable of objectively weighing the evidence actually presented at trial.[5] *See id.* at 1020. Thus, no relief is due.

Appellant lastly contends that the Commonwealth failed to disclose a report prepared by Trooper Urey following his response to the complainant's 911 call. By way of background to this claim, Appellant, on January 14, 2013, filed a pretrial request for discovery and bill of particulars, seeking, *inter alia*, "a copy of any police reports." Appellant's Req. for Disc. & Bill of Particulars, 1/14/13, at ¶ 3. The Commonwealth filed its answer on March 6, 2013, and responded, "The entire police arrest report is not subject to discovery pursuant to the Pennsylvania Rules of Criminal Procedure. To the extent items in said police arrest report are discoverable and requested, copies of the relevant requested portions are attached. . . . ."

---

[5] We also note the trial court cautioned the jury that the arguments of counsel were not evidence, and when overruling Appellant's objection, reminded the jury that it was responsible for determining whether the evidence supported the prosecutor's argument. N.T., 11/6/13, at 49, 77.

Commonwealth's Answer to Req. for Disc. & Bill of Particulars, 3/6/13, at ¶ 3. Attached to the Commonwealth's answer was a copy of a Pennsylvania State Police Incident Report dated September 27, 2012, and signed by Trooper Urey. Although the copy of the incident report appeared incomplete,[6] Appellant did not file any further discovery motions.

On the first day of trial, Trooper Urey testified on cross examination that he prepared a report. N.T., 11/5/13, at 52. Counsel for Appellant stated she did not have the report. *Id.* Following a sidebar conference that was not recorded, the trial court overruled the objection. *Id.* at 53 Appellant's counsel then elicited Trooper Urey's testimony that his report contained the complainant's description of the perpetrator as having a strong body odor and a smell of alcohol. *Id.* Counsel concluded her cross-examination of Trooper Urey but reserved her right to recall the trooper. At the conclusion of the day, counsel received a copy of the report. *Id.* at 85.

On the second day of trial, Appellant recalled Trooper Urey during the defense's case-in-chief. Appellant asked the trooper three substantive questions regarding "information that no vehicle was seen in the area." N.T., 11/6/13, at 44. Trooper Urey responded he believed there was no vehicle seen in the area and acknowledged that the "report sa[id] that there was no vehicle in the area, just the description of the actor." *Id.*

---

[6] For example, the narrative portion of Trooper Urey's incident report began with the incomplete phrase "vehicles in the area." Incident Report, 9/27/12, at 3.

It is unclear from the present record or Appellant's arguments whether Appellant's challenge involves missing portions of Trooper Urey's September 27th incident report or a separate, additional report. Nevertheless, Appellant contends he was unaware that Trooper Urey prepared a report and the Commonwealth violated its continuing duty to disclose discovery materials. Appellant's Brief at 19. He concludes he is entitled to discharge or a new trial. *Id.* We disagree.

Pennsylvania Rule of Criminal Procedure 573 states:

> **(A) Informal.** Before any disclosure or discovery can be sought under these rules by either party, counsel for the parties shall make a good faith effort to resolve all questions of discovery, and to provide information required or requested under these rules as to which there is no dispute. When there are items requested by one party which the other party has refused to disclose, the demanding party may make appropriate motion. . . . .
>
> **(B) Disclosure by the Commonwealth.**
>
> (1) *Mandatory*. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.
>
> > (a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth;
>
> > (b) any written confession or inculpatory statement, or the substance of any oral confession or

inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made that is in the possession or control of the attorney for the Commonwealth;

(c) the defendant's prior criminal record;

(d) the circumstances and results of any identification of the defendant by voice, photograph, or in-person identification;

(e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence; and

(g) the transcripts and recordings of any electronic surveillance, and the authority by which the said transcripts and recordings were obtained.

(2) *Discretionary With the Court*.

(a) In all court cases, except as otherwise provided in Rules 230 (Disclosure of Testimony Before Investigating Grand Jury) and 556.10 (Secrecy; Disclosure), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

(i) the names and addresses of eyewitnesses;

(ii) all written or recorded statements, and substantially verbatim oral statements, of

eyewitnesses the Commonwealth intends to call at trial;

(iii) all written and recorded statements, and substantially verbatim oral statements, made by co-defendants, and by co-conspirators or accomplices, whether such individuals have been charged or not; and

(iv) any other evidence specifically identified by the defendant, provided the defendant can additionally establish that its disclosure would be in the interests of justice.

\* \* \*

**(D) Continuing Duty to Disclose.** If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness.

**(E) Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(A), (B)(1), (B)(2)(a), (D)-(E).

Under Paragraph (E) of Rule 573, the trial court "possesses discretion in fashioning an appropriate remedy for a violation of the rules of discovery." *Commonwealth v. Smith*, 955 A.2d 391, 395 (Pa. Super. 2008) (*en banc*). We review the trial court's determination of a remedy for an abuse of discretion, mindful of the general rule that "[a] continuance is appropriate

where the undisclosed statement or other evidence is admissible and the defendant's only prejudice is surprise." *Id.* (citation omitted).

Instantly, Appellant does not describe the contents of the report that was belatedly disclosed or demonstrate how the Commonwealth's late disclosure violated Rule 573. Thus, even assuming that the Commonwealth violated a duty to disclose, Appellant has not established prejudice. *See id.* Moreover, he does not challenge the trial court's decision to grant disclosure of the report and ensure Trooper Urey was available for further cross-examination by the defense. Our own review of the record reveals no basis to conclude that the trial court's remedy constituted an abuse of discretion. *See id.* Accordingly, following our review of the record, Appellant is not entitled to appellate relief from the belated disclosure of the report.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2015