COMMONWEALTH of Pennsylvania,

v.

Michael C. JUDY, Appellant.

Superior Court of Pennsylvania.

Argued March 18, 2009.

Filed July 30, 2009.

William T.C. Tully, Harrisburg, for appellant.

Jacob W. Wyland, Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

BEFORE: BOWES, DONOHUE, and FREEDBERG, JJ.

OPINION BY FREEDBERG, J.:

¶ 1 Appellant Michael C. Judy appeals from judgment of sentence after a jury convicted him of sexual offenses stemming from his alleged sexual abuse of a female child over a period of eight years. Appellant was sentenced to an aggregate term of four to ten years in state prison and classified as a sexually violent predator. Post-sentence motions were denied and timely appeal followed. The record discloses compliance with Pa.R.A.P.1925. Appellant maintains that statements made by the assistant district attorney in closing argument constituted prosecutorial misconduct, that a mistrial was warranted, and that the intentional nature of the misconduct bars retrial under double jeopardy principles. We disagree. Accordingly, we affirm judgment of sentence.

¶ 2 The female child victim was born June 5, 1993. When she was approximately two years old she began to spend time staying with Appellant and his wife. The child regarded Appellant as her uncle, though they were not related. In April of 2006, she was hospitalized for depression after a period of behavioral, attitudinal, and academic deterioration, as well as expressions of a desire to hurt herself. In a family therapy session during this hospitalization she first disclosed the years of sexual abuse at the hands of Appellant. She disclosed that Appellant touched her every time she would stay with him, and she described that the touching included digital penetration.

¶ 3 At trial the victim testified that between ages two and ten she would stay with Appellant and his wife and that during these times Appellant would touch her under her clothes and that the touching included digital penetration. This occurred in bed, in the bath, and after bath. She also described use of a "massager thingie" and stated that Appellant made

her look at "bad" pictures on the computer.

¶ 4 Appellant testified at trial. He denied sexually abusing the child and stated that the first he learned of any of this was when police arrested him at his place of work. The defense in the case was premised largely upon the theory that the child fabricated the allegations of abuse against Appellant in order to obtain the attention and support of her family. The defense pointedly sought to portray the victim as a troubled child unworthy of belief and sought to characterize the Commonwealth's case as an unreasonable rush to judgment based on the unsupported allegations of that troubled child.

¶ 5 The only contention raised on appeal is that certain comments of the assistant district attorney in closing constituted prosecutorial misconduct warranting mistrial. No objection was lodged during the closing argument of the Commonwealth. However, following the closing argument of the Commonwealth, defense counsel asked to approach and the following exchange occurred:

> MR. TULLY: I need to put objections on the record. The prosecutor rendered his personal opinion as to the truth and veracity. He once started off by saying that if Mr. Judy took the stand and told the truth, he would go to jail. That was clearly a personal reference as to the guilt of my client, as opposed to an objective one based on the facts.
>
> Also rendered his opinion that he looked like a child molester. He made reference to the red herring, which is very similar to the smoke screen defense and Mr. Tully gave you his version and I would like to provide you with the truth. Again rendering a personal opinion that he was rendering the truth, which is again I think prosecutorial misconduct

which is the cause for a mistrial and I make a motion for mistrial.

> THE COURT: You motions are denied.

N.T. at 367–368. That ended the exchange, and there was no request for any contemporaneous curative instruction.

██ ¶ 6 We note that issues relating to the objection and request for mistrial on the ground of prosecutorial misconduct are properly preserved notwithstanding the fact that counsel waited until the end of the assistant district attorney's closing to lodge the objection and move for a mistrial. *Commonwealth v. Rose,* 960 A.2d 149, 154–155 (Pa.Super.2008). While the lack of a request for a contemporaneous curative instruction constitutes a waiver of any claim of error based upon the failure to give such curative instruction, the objection coupled with the request for the remedy of a mistrial preserves denial of the mistrial for appellate review. *Commonwealth v. Robinson,* 543 Pa. 190, 670 A.2d 616, 622 n. 9 (1995).

¶ 7 Although there was no request for any contemporaneous curative instruction, the charge of the court included a general instruction that the arguments of counsel are not evidence but that such arguments may be considered as a factor in deliberations. N.T. at 370. The charge of the court also included a general instruction that the jurors are the sole judges of the facts and of the credibility of the witnesses. N.T. at 375. At the conclusion of the charge of the court, on specific inquiry from the trial judge, both counsel stated that there were no other matters that counsel wanted included in the charge. N.T. at 384.

¶ 8 Appellant presents the following issue for our review on appeal: Whether the trial court abused its discretion in denying a motion for mistrial based upon intentional prosecutorial misconduct committed during closing argument. Brief of Appel-

lant at 4. In his brief, Appellant maintains that the comments of the assistant district attorney in closing were improper, inflammatory, and had the unavoidable effect of prejudicing jurors thereby depriving Appellant of a fair trial. With specific reference to the American Bar Association Standards governing closing argument, Appellant contends that the comments of the assistant district attorney in closing constituted prosecutorial misconduct in the following particulars: (1) the assistant district attorney intentionally misstated the evidence and misled the jury as to the inferences it may draw; (2) the assistant district attorney expressed his personal belief or opinion as to the truth or falsity of testimony and the guilt of the accused; (3) the assistant district attorney employed arguments calculated to inflame the passions or prejudices of the jury; and (4) the assistant district attorney employed arguments to divert the jury from the duty to decide the case on the evidence by injecting issues broader than guilt or innocence of the accused or by making predictions of the consequences of the jury's verdict.

█ ¶ 9 The following standards govern our review of the denial of a motion for mistrial:

In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, ... assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Commonwealth v. Lettau*, 955 A.2d 360, 363 (Pa.Super.2008) (internal citations and quotations omitted). The remedy of a mistrial is an extreme remedy required "only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal." *Commonwealth v. Johnson*, 719 A.2d 778, 787 (Pa.Super.1998) *(en banc), quoting Commonwealth v. Montgomery*, 533 Pa. 491, 626 A.2d 109, 112–113 (1993).

█ ¶ 10 With specific reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that "[i]n reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made." *Commonwealth v. Sampson*, 900 A.2d 887, 890 (Pa.Super.2006) (citation omitted). Our review of prosecutorial remarks and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. *Commonwealth v. Rios*, 554 Pa. 419, 721 A.2d 1049, 1054 (1998). This Court has observed that

[i]n defining what constitutes impermissible conduct during closing argument, Pennsylvania follows Section 5.8 of the

American Bar Association (ABA) Standards. Section 5.8 provides:

Argument to the jury.

(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

*Sampson*, 900 A.2d at 890, *quoting* American Bar Association (ABA) Standards, Section 5.8. In addition, we note the following:

It is well settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence. Further, prosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. Prosecutorial misconduct is evaluated under a harmless error standard.

*Commonwealth v. Holley*, 945 A.2d 241, 250 (Pa.Super.2008) (internal citations and quotations omitted). We are further mindful of the following:

In determining whether the prosecutor engaged in misconduct, we must keep in mind that comments made by a prosecutor must be examined within the context of defense counsel's conduct. It is well settled that the prosecutor may fairly respond to points made in the defense closing. Moreover, prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair.

\* \* \* \* \* \*

 It is settled that it is improper for a prosecutor to express a personal belief as to the credibility of the defendant or other witnesses. However, the prosecutor may comment on the credibility of witnesses. Further, a prosecutor is allowed to respond to defense arguments with logical force and vigor. If defense counsel has attacked the credibility of witnesses in closing, the prosecutor may present argument addressing the witnesses' credibility.

*Commonwealth v. Chmiel*, 585 Pa. 547, 889 A.2d 501, 544 (2005) (internal citations and quotations omitted).

¶ 11 Thus, proper examination of the comments of the assistant district attorney in closing requires review of the arguments advanced by the defense in defense summation. As indicated, the defense in this case was based essentially upon the notion that the child fabricated the allegations against Appellant in order to satisfy her own self-interested motives and obtain the favor of her family. The defense actively sought to portray the victim as unworthy of belief and sought to characterize the Commonwealth's case as based on

nothing more than the unsupported allegations of a troubled child. The defense closing included argument in the following particulars: that the case was about the uncorroborated allegation of one girl, N.T. at 321–322; that the victim recounted the allegations of abuse in an unbelievable and inconsistent manner, N.T. at 322; that there was an unreasonable rush to judgment by family and police, N.T. at 323, 326–327; that children lie and everyone knows it, N.T. at 323; that the child here was particularly troubled and particularly likely to lie, N.T. at 323–325; that the child here had an agenda or motive to lie, N.T. at 324, 336; that the allegations were the unreliable product of a family confrontation in a psychiatric hospital setting, N.T. at 324–325; that not even family believed the allegations at first but that family then unreasonably and without cause rushed to the support of the child, N.T. at 326–327; that the child herself prevented a physical examination to attempt to corroborate her allegations, N.T. at 327–328; and that the grossly delayed reporting of the allegations cast great doubt on anything the child says, N.T. at 339–340.

¶ 12 Appellant first maintains that the assistant district attorney intentionally misstated the evidence and misled the jury as to the inferences it may draw when the assistant district attorney made argument concerning the investigation generally and specifically whether Appellant was questioned, whether a computer was seized, and whether pictures were seized. Appellant contends that the argument of the assistant district attorney "created the impression that there was evidence which existed outside the record which completely contradicts appellant's testimony." Brief of Appellant at 10. The comments at issue follow:

> Mr. Tully said some other things. There is a thing when two lawyers argue especially in closing arguments, we need to be careful not to offer facts not in evidence. Now, Mr. Tully represented something to you that I did not object to but I would like to clarify at this time. He said the defendant was not questioned. He said the computer was not pursued. He said the pictures were not pursued. I can't tell you whether they weren't or were because they weren't in evidence.
>
> What is proper to say is that the evidence that you heard in Court today didn't talk about whether or not the defendant was questioned, didn't talk about the computer or the pictures. There is no evidence of that. That doesn't mean that that did happen or didn't happen.
>
> I presented to you in my case the evidence that we had. I didn't present all of the steps that were taken throughout the course of an investigation to corroborate this child. I presented to you the evidence that we had. His statement to you that he was not spoken to, that the computer was not pursued, that the pictures were not pursued was not in evidence. That is not a fact. What you can consider is that it's not in the evidence whether we did or whether we didn't.

N.T. at 363–364.

¶ 13 At trial, Appellant testified that he was never questioned, that his computer was not pursued and that the pictures were not pursued. In defense closing there was a clear defense contention that police did nothing to investigate this case whatsoever and that Appellant was simply arrested and charged out of thin air on the word of a child. The defense closing included the following pointed argument:

> What we have in this case actually is not that complicated. We don't have any CSI evidence as the DA referred to in

the beginning. It is essentially the allegation of one girl. Now, we have heard other witnesses but if you stop and think about it, most of those other witnesses were not witnesses. They simply told about circumstances and what they were told in the psychiatric hospital in Philadelphia. So essentially what we have is an uncorroborated account.

N.T. at 321–322.

How much time went by from the time the allegation first arose until the time my client was arrested? Was there any attempt to talk to him, get his version? Was there any attempt to ask to see his computer to see if there were pictures on the computer or was this simply a child said it happened and therefore, it must have. A child would never lie.

N.T. at 323.

What about the rest of the institution? Was there an investigation by the police to corroborate, to verify, to see if it makes sense, to get Mike's version of what if anything happened? No. As soon as the child made the allegation, there is no investigation.

N.T. at 326–327.

Matter of fact, if all this stuff supposedly happened to [child], including this oval egg-shaped device supposedly being forced inside her, what about the medical examination. Was there an attempt to see if there is anything that would be consistent with something being inserted, the finger or this device from the time she was two years on? Any evidence about a damaged hymen? No. Why? [Child] was adamant about not being examined. And it wasn't in her best interests so she wasn't and there was never a follow-up. There was never an attempt to see if there is anything physiological that could perhaps confirm or not confirm whether anything happened during all those years.

N.T. at 327–328.

Again, makes no sense and no one ever checked the computer or hard drive to see if anything was on there or deleted from there. Especially when you go out there and surprise and nobody knows they are being investigated. There was no attempt to corroborate, no attempt to evaluate, no attempt to see if this troubled child in a psychiatric hospital may have made up something to get her out of her difficult situation.

N.T. at 337.

Ladies and gentlemen, all we have is an allegation, no corroboration, no consistency, no prompt report and it defies logic. There was no investigation, no verification, no attempt at verification, no medical examination. The way everyone jumped into lockstep is frightening. A simple allegation brought about a charge and a trial.

N.T. at 340.

You heard the evidence. I submit to you, you heard a lack of evidence. You heard the inconsistencies and you have to decide the credibility and essentially because there is nothing but her statement, you have to believe [child] beyond a reasonable doubt.

N.T. at 341.

▰▰▰ ¶ 14 The comments of the assistant district attorney represented fair response to such a contentions and did nothing more than focus the attention of the jury on the evidence that was presented by the Commonwealth and away from what could have been presented, what might have been presented, or what was not presented. It is true that there was evidence in the form of Appellant's testimony to the effect that Appellant was never questioned, his computer was not pursued,

and that the pictures were not pursued. To that extent, the assistant district attorney's implication that there was no such evidence was factually inaccurate. However, no part of the assistant district attorney's argument suggested that police did question Appellant or that police did pursue those other investigative avenues. The challenged comments represented permissible vigorous response to the defense. *See Chmiel*, 889 A.2d at 544. A mistrial was not warranted on this contention.

¶ 15 Next, Appellant contends that the assistant district attorney expressed his personal belief or opinion as to the truth or falsity of testimony and the guilt of the accused. Specifically he claims the assistant district attorney argued that Appellant lied on the stand; that, on all of the evidence, it is Appellant who looks like a child molester; that Appellant's defense was a series of "red herrings"; and that the Appellant provided his "version", but that the prosecutor would be providing "the truth". The complained of comments follow:

> The defendant on the other hand has every motive in the world to lie. If he would take the stand and tell you the truth, he would be going to prison. But by taking the stand and lying, he potentially if he is fortunate enough to convince all 12 of you that he didn't do these terrible things, then he walks away. He is free.

N.T. at 347.

> I will tell you, ladies and gentlemen, after all the testimony that we heard in court today, I can tell you with absolute certainty who, in fact, does look like a child molester and that's Mike Judy. Now, Mr. Tully has done his job in this case. He has done a good job creating scenarios of potential doubt. But I caution you to be careful of red herrings.

This is a cliché that you hear a lot. And I talked with some folks in my office before and through law school and everything about how to give a closing argument and what you say and this red herring concept comes up.

I was concerned about using it and not being sure what it meant so I looked it up. The historical deviation of this concept of a red herring involves training fox hounds. A red herring is a stinking fish. They would drag it across a field where there happened to be foxes. They would then release the hounds. The hounds that went after the foxes were made into fox hounds. The hounds that followed the scent of the stinking fish, of the red herring were I assume made into pets. Beware of the red herring.

N.T. at 349.

> Now, Mr. Tully has taken you through a sequence of events. I know you all heard the testimony. Since he provided you with his version, I would like to provide you with the truth.

N.T. at 351.

¶ 16 As for the assistant district attorney's comment that Appellant had a motive to lie on the stand, such comment is not impermissible in its context. Our courts have explained that "a prosecutor cannot intrude upon the exclusive function of the jury to evaluate the credibility of witnesses by broadly characterizing the testimony of a witness as a 'big lie.'" *Commonwealth v. Cox*, 581 Pa. 107, 863 A.2d 536, 547 (2004), *citing Commonwealth v. Ragan*, 538 Pa. 2, 645 A.2d 811, 829 (1994); *Commonwealth v. Kuebler*, 484 Pa. 358, 399 A.2d 116, 118 (1979). Nonetheless, "a prosecutor's assertion that a witness had lied does not warrant a new trial when the statement was a fair inference from irrefutable evidence rather than

a broad characterization." *Cox*, 863 A.2d at 547, *quoting Ragan*, 645 A.2d at 829, *citing Commonwealth v. Floyd*, 506 Pa. 85, 484 A.2d 365, 369 (1984).

 ¶ 17 In cases where the outcome is controlled by credibility determinations, a prosecutor is permitted to make comments reinforcing the fact that the jury is presented with conflicting accounts. *Commonwealth v. Johnson*, 527 Pa. 118, 588 A.2d 1303, 1307 (1991). A prosecutor's contention that a defendant lied is neither unfair nor prejudicial when the outcome of the case is controlled by credibility, the accounts of the victim and the defendant conflict, and defense counsel suggests that the victim is fabricating. *Johnson*, 588 A.2d at 1307. Under such circumstances, "it would be difficult to conceive of any other approach when closing to the jury." *Johnson*, 588 A.2d at 1307. A mistrial was not warranted.

 ¶ 18 As for the assistant district attorney's comment to the effect that, on all of the evidence, it is Appellant who looks like a child molester, the comment must be considered in its context. The assistant district attorney was arguing that it is not possible to tell whether a person is a child molester by the way a person looks; that child molesters look like everyone else. Immediately before the challenged comment, the assistant district attorney stated that "[w]e can't tell who is a child molester by looking at them." N.T. at 348. The assistant district attorney was advancing the argument that the evidence, not expected or anticipated physical appearances, demonstrated that Appellant had molested a child. That the assistant district attorney did so with a level of oratorical flair does not render the trial unfair. No mistrial was warranted.

¶ 19 As for the assistant district attorney's comments that Appellant's defense was a series of "red herrings" and his comment that the Appellant provided his "version", but that the assistant district attorney would be providing "the truth", such comments are likewise not problematic in context. These are the type of comments deemed to question the honesty and motivation of the defense. *Commonwealth v. Basile*, 312 Pa.Super. 206, 458 A.2d 587, 592 (1983). Such comments by a prosecutor are not favored. There is, however, no *per se* rule in place requiring a mistrial. *Basile*, 458 A.2d at 593. New trials have been granted for comments such as "[d]on't allow the defendant to sneak out . . . under the cover of smoke", and on the basis of comments generally referring to a "smoke screen". *Basile*, 458 A.2d at 593, *citing Commonwealth v. Long*, 258 Pa.Super. 312, 392 A.2d 810 (1978); *Commonwealth v. Collins*, 462 Pa. 495, 341 A.2d 492 (1975). *See also Commonwealth v. Gilman*, 470 Pa. 179, 368 A.2d 253 (1977) (disapproval of prosecutor describing defense strategy as attempt to "becloud the issue", "deceive" the jury, and "sneak out" with a lesser verdict). In other instances, such comments have been found not worthy of any relief because the comments in themselves were not of such character to inflame, distract, or mislead the jury. *Commonwealth v. Youngkin*, 285 Pa.Super. 417, 427 A.2d 1356, 1364 (1981) (comments regarding "smoke" and "confusion" by themselves not deemed to so inflame, distract, or mislead the jury as to warrant a new trial); *Basile*, 458 A.2d at 593 (comments regarding "smoke screen", avoiding getting "diverted" or sent down "side roads" by themselves not deemed to so inflame, distract, or mislead the jury as to warrant a new trial); *Commonwealth v. Rucci*, 543 Pa. 261, 670 A.2d 1129, 1142 (1996) (prosecutor reference to defense counsel setting up "smoke screens" does not rise to level requiring new trial). In still other instances, similar comments

have been found to constitute fair response to defense arguments. *Commonwealth v. Maxwell*, 505 Pa. 152, 477 A.2d 1309, 1316–1317 (1984) (prosecutor reference to defense counsel arguing in such manner as to "blow smoke" found to constitute fair response to attack on prosecutor); *Commonwealth v. Parente*, 294 Pa.Super. 446, 440 A.2d 549, 553 (1982) (prosecutor reference to defense raising "red herrings" and "phony issues" found to constitute fair response to defense arguments); *Commonwealth v. Baynes*, 269 Pa.Super. 563, 410 A.2d 845, 846–847 (1979) (prosecutor references to defense counsel as using tactics such as "throwing sand" or producing "red herrings" deemed to constitute fair response).

¶ 20 Notably, the defense closing in the present case included the following argument:

And in this case what is interesting is we have a child that is very troubled. We have a child whose mother is upset because she's starting to dress Gothic, calling herself Goth, not behaving well, not doing well in school. Then I think she said something about her letting the dogs out and it got her really angry about this behavior. She didn't like the explanation of how the dogs got out so she calls Crisis Intervention. Crisis tells her, take her to the emergency room. She goes to the emergency room and there [child] says, I hate my mom, I hate my dad, I want to run away.

Then she's referred to a psychiatric hospital because they are concerned for her well-being. There they initially believe she's depressed and they evaluate her in the very beginning. It is kind of interesting because they come right out and say, why are you here. What were her words? I hate my mom. I hate my stepdad. I want to go live with my father in Louisiana. I'm having trouble with my grades.

A question was asked, has anyone ever sexually abused you or physically abused you. No. No one in the room other than the therapist asking. But again she's even talked to by the psychiatrist on a one-on-one situation and specifically asked the day before the family interview, the day before the family is gathered, were you ever sexually abused? No. Missy sees her aunt, sees her the day before the family interview. Did B.J. or your stepfather touch you? No. Don't you think I would have told you. Did she volunteer anything else? No. Then we have the confrontation. Remember the family members meet with the therapist ahead of time. What is this about? She wants to go to Louisiana. You got to be a united front. It's not an option that she can go to Louisiana so you have to stay together on this. That's the issue.

N.T. at 323–325.

Remember her own testimony. Supposing this began when she was two in pull-ups, she described essentially one house, but that house was a house she wasn't in when she was two or three or four or five. Matter of fact, I even asked her simple questions. Do you remember this happening when you were two? Tell me something else you remember when you were two. What about the second birthday, your third birthday, your fourth birthday? No recollection but she supposedly remembers this sort of conduct back when she was two.

N.T. at 333.

Now, what is interesting is that we have a situation where you have a troubled child that has an agenda. There were three things she was concerned with. She was worried about flunking out of school, worried about moving back with

dad—with mom and stepfather Glenn and wanting to move with her dad in Louisiana.

N.T. at 336.

What happened as a result of that? What is interesting is she simply says that Uncle Mike touched her and what happened. It was no longer confrontation. It was no longer problems with school, no longer problems with behavior. It was no longer problems with stepfather. It is all about, it's not your fault. It is all hugs, support, acquiesce. She gets a cat. Everyone is supportive. No one challenges her anymore. It all goes her way.

N.T. at 337.

More importantly, she gets her final wish. She's no longer with stepfather Glenn. Where is she? She's living with her dad in Louisiana. She mentioned the words she thought they wanted to hear. Remember Miss Bruchet said, you have to be very careful with kids. Depending how you ask things, they will give you what they think you want to hear. How many times was she asked about whether she was touched by someone? That's what she says and from that moment on, her life changes totally for the best.

N.T. at 338.

¶ 21 In the instant case, in the context of the argument as a whole, the assistant district attorney's comment to the effect that Appellant's defense was a series of "red herrings" and his comment to the effect that the Appellant provided his "version", but that the assistant district attorney would be providing "the truth", each represented fair response to the defense argument that the victim fabricated the allegations of abuse against Appellant in order to accommodate her own entirely self-interested motives. A mistrial was not warranted on this contention.

¶ 22 Further, Appellant contends that the assistant district attorney employed arguments calculated to inflame the passions or prejudices of the jury when he referenced the O.J. Simpson trial, when he referred to Appellant as a pedophile, when he made argument that personalized these circumstances for the jury, and when he made argument to the effect that the victim had a right to be believed, that the victim deserved justice, and that the abuse at the hands of Appellant will stay with the victim into adulthood. The comments at issue follow:

This isn't a complicated case. It's not a circumstantial case. O.J. Simpson's case was a circumstantial case. You had a dead body and you had no eyewitnesses. You had some physical evidence and you had some potential motives for committing a crime.

N.T. at 342–343.

But I tell you what is reasonable is what the evidence shows. They found out that this beloved member of their family was a pedophile so they took steps to protect the child that was in his care from the same abuse that [child] suffered. That's reasonable.

N.T. at 362.

When her mother talked to her, she reminded her that not only you but there is somebody else involved too. That's reasonable. I mean how would any of us react if we were confronted with this. If you found out that your brother-in-law had been assaulting your daughter for years, I think everything this family did was absolutely reasonable.

N.T. at 362.

Every eyewitness comes in here with the right to be believed, even a child, even though a child may not vote, may not drive, may not buy liquor, they still

in our criminal justice system have the right to be believed.

Today, ladies and gentlemen, based on all of the evidence that you heard, I am asking for the truth. Based on the testimony you heard, what do you believe is the truth? I implore you to give this little girl justice. Things that happen to us when we are children remain with us and become a big part of who we become as adults.

N.T. at 365.

■ ¶ 23 The passing reference to the O.J. Simpson trial simply drew a distinction between a case involving circumstantial evidence and a case involving direct evidence. Immediately before the challenged comment, the assistant district attorney reminded the jury that this was a case "about direct evidence", and specifically "about the testimony predominantly of [child]." N.T. at 342. A mistrial was not warranted.

■ ¶ 24 The reference to Appellant as a pedophile and the argument that tended to personalize these circumstances for the jury were made in direct response to the defense contention that it was unreasonable for the victim's family to credit the allegations of such a troubled child. The defense closing contained the following argument:

> That's important because what about those dynamics. Each of those individuals found it to be completely unbelievable. Matter of fact, Missy, Mike's estranged wife found it to be completely unbelievable. Then within moments, they found the guidance of the therapist to be supportive. Now, we believe you. It wasn't your fault. Did one person from that point on ever even question the origins of the allegation? Did it make sense? Did it fit in? Did you hear from one witness that ever questioned, did it make sense? Did anyone

ever explain how they went from it was unbelievable to they are adamant that it happened.

With Missy, it is kind of interesting too. Completely impossible, not Mike. Then she refused according to her to listen to any of the details. She didn't even look at the video. She didn't want to know anything about the details but now Mike went from saint to Satan and based on what? Corroboration? Consistency? Does it make sense? No. But, of course, that's family.

N.T. at 326–327.

¶ 25 The comments of the assistant district attorney represented a fair means of attempting to persuade the jury that the reaction of the victim's family to the allegations of abuse was entirely reasonable and not at all out of the ordinary. The challenged comments represented permissible vigorous response to the defense. *See Chmiel*, 889 A.2d at 544. A mistrial was not warranted.

¶ 26 The arguments to the effect that the victim had a right to be believed, that the victim deserved justice, and that the abuse at the hands of Appellant will stay with the victim into adulthood, represented permissible oratorical flair responsive to the defense contentions that such a troubled child was not worthy of belief. Here too the challenged comments represented permissible vigorous response to the defense. *See Chmiel*, 889 A.2d at 544. Moreover, the comments in this regard are expressly couched in terms of a request that the jury make a determination as to the truth "based on all of the evidence" presented. N.T. at 365. A mistrial was not warranted.

¶ 27 Finally, Appellant contends that the assistant district attorney employed arguments to divert the jury from the duty to decide the case on the evidence by inject-

ing issues broader than guilt or innocence of the accused or by making predictions of the consequences of the jury's verdict when he made argument regarding the abuse staying with the victim for the rest of her life and argument suggesting that while their verdict would not fix everything, it could potentially make things worse. The challenged comments follow:

Sadly for [child], this abuse that she suffered at the hands of her beloved Uncle Mike Judy is going to remain with her for the rest of her life. All of the king's horses and all of the king's men can't fix that. Finding Mike Judy guilty of the crimes that he committed won't completely fix that but your decision today while it can't completely fix it, potentially could make it a lot worse. Justice, ladies and gentlemen, is the truth. This is a simple case. This is about a sad little girl that loved—no, she adored her Uncle Mike. She loved him. She trusted him. The family loved him. The family trusted him. And sad for [child] and sad for the entire family, he violated that love and that trust when he violated this little girl. If you believe [child], then you must come back with a verdict of guilty.

N.T. at 365–367.

¶ 28 These comments of the assistant district attorney represented permissible oratorical flair framed expressly with the prosecutor's admonition that the case hinged on a credibility determination. A prosecutor is permitted latitude to make argument with oratorical flair. *See Chmiel*, 889 A.2d at 544. The prosecutor was not diverting the jury from deciding the case on the evidence; rather he was imploring the jury to do so. No relief is warranted.

¶ 29 In sum, the trial court did not abuse its discretion if refusing to grant a mistrial on the basis of prosecutorial misconduct.

None of the comments of the assistant district attorney were of the type or kind to have the unavoidable effect to prejudice the jurors by forming in their minds a fixed bias and hostility in such manner as to impeded their ability to weight the evidence objectively and render a true verdict. The allegations of prosecutorial misconduct are without merit. Moreover, the jury was properly instructed that arguments of counsel were not evidence and that it was their task and their task alone to pass upon the credibility of the witnesses. The jury is presumed to have followed such instruction. *Commonwealth v. Thompson*, 442 Pa.Super. 447, 660 A.2d 68, 76 (1995). No relief is warranted.

¶ 30 Judgment of sentence **AFFIRMED.** Jurisdiction **RELINQUISHED.**