J-S19003-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIAM ROGERS | |
| Appellant | No. 3605 EDA 2013 |

Appeal from the Judgment of Sentence entered September 27, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0007426-2012

BEFORE:  STABILE, JENKINS, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 23, 2015**

Appellant, William Rogers, appeals from the September 27, 2013 judgment of sentence imposing life in prison without parole for first-degree murder, a concurrent three to six year sentence for unlawful possession of a firearm, and a concurrent two to five year sentence for possession of an instrument of crime.[1]  We affirm.

The testimony of multiple eyewitnesses established that Appellant shot the victim after an altercation that occurred on the 2200 block of West Edgeley Street in North Philadelphia on March 14, 2012.  The trial court summarized the pertinent facts:

---

[1] 18 Pa.C.S.A. §§ 2502(a), 6106, and 907, respectively.

Zahir Wiggins testified that on 3/14/12, he was walking on the 2200 block of West Edgeley Street between 5:00 P.M. and 5:30 P.M. when he heard shots and saw a group of people running from the area where a male, later identified as the decedent, was lying in the middle of the sidewalk. Approximately 45 seconds after hearing the shots, he saw [Appellant], aka 'Slug', who[m] he knows from the Raymond Rosen projects, running down 23rd Street with something in his hand. He did not know what [Appellant] was holding.

Mr. Wiggins testified that five minutes prior to hearing the gunshots and seeing the decedent lying on the sidewalk, he saw 'Diddy', 'Ab' and [Appellant] engaged in a fistfight with the decedent.

Mr. Wiggins provided a signed statement to homicide detectives on 3/29/12 at 2:50 P.M. In that statement, he indicated that he saw [Appellant] running down Edgeley Street toward 24th Street holding a gun down by his leg.

At trial, Mr. Wiggins testified that he did not want to testify because his family still lives in the area where the incident occurred and he felt threatened for them.

Nyteisha Sanders testified that on 3/14/12 between 5:15 and 5:30 P.M., she was at a store at 23rd and Diamond Streets, when she heard gunshots and saw a group of people standing over a male lying on the ground, bleeding. She testified that she did not see the shooting or who did the shooting. And, that she did not see [Appellant] running away from the area.

In a signed statement given by Ms. Sanders to homicide detectives on 5/14/12, she indicated that as she was walking back from the store she saw [Appellant] standing on the corner at 23rd and Edgeley Streets pointing a gun at a male, later identified as the decedent, and saying to the decedent "I told you not to come back.' [Appellant] then started shooting at the decedent. [Appellant] was wearing a gray hoodie. After shooting at the decedent, [Appellant] ran with two (2) other males across Edgeley Street and up Judson Street. She had seen [Appellant] before in the neighborhood for approximately a year. [Appellant] has a tattoo on his neck that reads 'Slug.' She identified and signed a photograph of [Appellant].

Shanae Talley, Zahir Wiggins' sister, testified that at approximately 5:15 P.M. on March 14, 2012, she was standing at 23rd and Edgeley Streets talking to a friend when she heard gunshots. She turned around to see Appellant, who[m] she knows from the neighborhood as 'Slug,' running down Edgeley Street.

In her signed statement of 3/19/12, Ms. Talley indicated that she saw a tall, light-skinned male she knows as 'Slug' standing on the corner. She did not see a gun but saw 'fire' coming from an item he was pointing. Immediately after hearing the gunshots, she saw 'Slug' run down Edgeley Street to Judson Street. She could only see the side of his face but knew it was Slug because he was wearing a gray hoodie that she had seen him wearing before and she knows him from the neighborhood.

In her April 17, 2012 statement, Ms. Talley identified and signed a photo of [Appellant].

Enrico Crispo testified that he was at a community meeting at the recreation center located at 23rd and Edgeley Streets on 3/14/12. After the meeting as he was walking to his car, a black male, 5'8" tall, weighing 140-150 pounds, wearing jeans and a dark sweatshirt walked by him at a fast pace. Mr. Crispo looked back at the male and saw him reach into the back of his pants and pull out a modern-looking black gun that was 'not a revolver type.' The male proceeded north to the southwest corner of 23rd and Edgeley Streets. As the male approached the corner, he nodded at two (2) younger black males who were sitting on bikes at the corner. The males on the bikes separated allowing a clear path between the male with the gun and another male, later identified as the decedent. The male with the gun shot the decedent from approximately twenty-five feet away. The decedent collapsed on the corner. The shooter walked away quickly, travelling west on Edgeley Street. Mr. Crispo could not identify the shooter.

Trial Court Opinion, 8/7/14, at 2-4 (record citations omitted).

On September 27, 2013, a jury found Appellant guilty of the aforementioned offenses. The trial court imposed sentence the same day. Appellant filed a timely post-sentence motion for a new trial on October 2,

2013. The trial court denied that motion on December 9, 2013 and Appellant filed this timely appeal on December 17, 2013.

Appellant raises two issues for our review:

I.   Did the prosecutor commit misconduct in summation when she told the jury she had personal knowledge that 'the defendant does not tell the truth,' which because of its impact on the verdict requires reversal?

II.  Did the prosecutor commit misconduct when she condemned an entire section of the city as having a lawless culture where law enforcement is a base value and assisting criminals is a positive value such as to require reversal?

Appellant's Brief at 6. Appellant unsuccessfully sought a mistrial after the prosecutor's alleged misconduct during closing argument. We review the order denying a mistrial as follows:

In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009). Mistrial is an "extreme remedy" necessary "only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal." *Id.*

The *Judy* Court analyzed prosecutorial misconduct in the context of a closing argument. The prosecutor's remarks "cannot be viewed in isolation but, rather, must be considered in the context in which they were made." *Id.* (quoting *Commonwealth v. Sampson*, 900 A.2d 887, 890 (Pa. Super. 2006), *appeal denied*, 907 A.2d 1102 (Pa. 2006)). "It is well settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence." *Id.* at 1020 (quoting *Commonwealth v. Holley*, 945 A.2d 241, 250 (Pa. Super. 2008), *appeal denied*, 959 A.2d 928 (Pa. 2008)). "Further, prosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict." *Id.* "Prosecutorial misconduct is evaluated under a harmless error standard." *Id.*

Pennsylvania courts hold prosecutors to the standards set forth in the American Bar Association Standards:

Argument to the jury.

(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b) **It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.**

(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

*Id.* at 1020 (emphasis added) (quoting American Bar Association Standards, § 3-5.8).

"[T]he prosecutor may fairly respond to points made in the defense closing." *Commonwealth v. Chmiel*, 889 A.2d 501, 543 (Pa. 2005), *cert. denied*, 549 U.S. 848 (2006). "A remark by a prosecutor, otherwise improper, may be appropriate if it is in fair response to the argument and comment of defense counsel." *Id.* (quoting *Commonwealth v. Trivigno*, 750 A.2d 243, 249 (Pa. 2000) (plurality)).

Appellant first challenges the prosecutor's statement that she knew the defendant did not tell the truth. For context, the record reflects that defense counsel, during his closing, argued that Appellant's statement, assuming its correctness, "totally refutes the facts of the other witnesses, the eyewitnesses." N.T. Trial, 9/27/13, at 45.

The prosecutor assessed Appellant's statement in her closing:

Here is his statement. What did he say? Painfully, and you know what, **I know [Appellant] does not tell the truth.** He did not tell the truth – (Indicating).

[Appellant's Counsel]: Objection, move for a mistrial.

[Prosecutor]: **He is a fibber.**

[Appellant's Counsel]: Personal opinion.

The Court: Overruled. It is argument.

N.T. Trial, 9/27/13, at 80 (emphasis added). The prosecutor went on to explain, in light of the evidence, why Appellant's statement was not believable. *Id.* at 80-90.

The statements bolded above, in our view, plainly violate the ABA standards as set forth in *Judy*. *Judy*, 978 A.2d at 1020. The prosecutor unambiguously expressed her personal opinion of Appellant's veracity. Nonetheless, the law requires us to consider those statements in context rather than isolation. *Id.* After the objectionable statement, the prosecutor explained in detail – based on the evidence of record and not based on her opinion – why Appellant's statement was not believable. Considering the prosecutor's statement in context, we believe it was a fair response to Appellant's counsel's assertion that Appellant's statement completely refutes all of the testimony evincing his guilt. Per *Chmiel*, a prosecutor is permitted to make a fair response to defense counsel's argument. *Chmiel*, 889 A.2d at 543. *Id.* Furthermore, we must analyze a prosecutor's conduct under a harmless error standard. *Judy*, 978 A.2d at 1020. As set forth above, the

record contains substantial direct evidence – in the form of eyewitness testimony – confirming Appellant's guilt. Given the overwhelming evidence of Appellant's guilt and the comparative insignificance of the prosecutor's remarks during closing, we cannot conclude the isolated objectionable remarks warrant a new trial.

Next, Appellant agues the prosecutor committed misconduct when she "condemned an entire section" of the city of Philadelphia, specifically the North Philadelphia projects. Appellant's Brief at 23. Once again, we begin with a review of the competing arguments of Appellant's counsel and the prosecutor. Appellant's counsel challenged the credibility of several Commonwealth witnesses because of their delay in coming forward with statements. N.T. Trial, 9/27/13, at 18-23. Likewise, some of the witnesses' in-court testimony differed from their statements.

In her closing, the prosecutor offered the following:

> The witnesses are scared. This is Philadelphia but more than Philadelphia, this is the projects in North Philly. These people, they got to live there. They told you their reasons. They said [. . . ] my momma lives in those projects. My family lives in those projects. They live there now. The other young lady [. . .] does your mother live in those projects? Yes, my 8-year-old brother lives there. Miss [. . . ], where do you live? I live in the projects too with my mother. So, ladies and gentleman of the jury, they know what they saw but the reality of this case is no matter what you all decide, they are going to have to go back home and the whole world, everybody in the projects is going to know that they are tattletales. They are snitches and that they told.
>
> [Appellant's counsel]: Objection.

The Court: Overruled.

*Id.* at 55-56.

Appellant asserts the prosecutor's closing argument improperly bolstered her witnesses' credibility, and that "she had no right to apologize for what she viewed as the deficiencies of her witnesses–their in court testimony–on a cultural basis–arguing that because of their culture or environment their in court testimony was not to be believed." Appellant's Brief at 23-24.

We discern no misconduct in this portion of the prosecutor's closing. The defense challenged the credibility of various Commonwealth witnesses because they came forward late and/or gave testimony that differed from their pre-trial statements to police. The prosecutor responded that the witnesses feared their cooperation with law enforcement could endanger them in the neighborhoods where they lived, a seemingly fair response to Appellant's counsel's argument. As the trial court explained, one witness, Zahir Wiggins, stated he did not wish to testify because he had family living in the vicinity of the murder scene. N.T Trial, 9/24/13, at 225-26. Nyteisha Sanders testified that her mother and 9-year-old brother live there. N.T. Trial, 9/25/13, at 49. Shanae Talley lives in the neighborhood with her mother and children. *Id.* at 114.

In support of his argument, Appellant cites ***Commonwealth v. LaCava***, 666 A.2d 221, 236 (Pa. 1995), in which our Supreme Court

remanded for a new sentencing hearing where the prosecutor committed misconduct during the summation in the penalty phase of a capital trial. The prosecutor invited the jury to consider the devastating impact drug dealers have on their communities, rather than the specific facts of the homicide at issue. *Id. LaCava* has no application here. The prosecutor did not attempt to transform the trial into a referendum on an issue of public importance. She argued, based on specific evidence, that reluctant witnesses and witnesses whose testimony differed from their police statements had reason to fear for their safety and that of their families. We do not believe the prosecutor engaged in misconduct, much less misconduct "of such a nature that its unavoidable effect [was] to deprive [Appellant] of a fair and impartial trial." *Judy,* 978 A.2d at 1019. Even if we were to conclude the trial court erred in overruling Appellant's objection to this line of argument, such error is harmless in light of the overwhelming direct evidence of Appellant's guilt.

In summary, we have concluded Appellant's assertions of prosecutorial misconduct do not merit relief. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/23/2015