J-S51035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
NAFIS ANTUAN FAISON, :
:
Appellant : No. 355 MDA 2019

Appeal from the PCRA Order Entered February 7, 2019
in the Court of Common Pleas of Lycoming County
Criminal Division at No(s):  CP-41-CR-0000147-2014

BEFORE:  PANELLA, P.J., GANTMAN, P.J.E., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED NOVEMBER 27, 2019**

Nafis Antuan Faison ("Faison"), *pro se*, appeals from the Order denying

his Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1]

We affirm.

In its Opinion and Order, the PCRA court summarized the relevant

history underlying the instant appeal as follows:

> The Commonwealth charged Faison with one felony count of
> possession with intent to deliver, [*see* 18 Pa.C.S.A. § 780-
> 113(a)(30);] three misdemeanor counts of possession of a
> controlled substance, [*see id.* § 780-113(1)(16);] one
> misdemeanor count of possession of drug paraphernalia, [*see id.*
> § 780-113(a)(32);] and one misdemeanor count of possession of
> a small amount of marijuana, [*see id.* § 780-113(a)(31)(i)].  As
> noted by PCRA [c]ounsel, "other than [M]otions for modification
> of bail, no pretrial motions were filed on Faison's behalf."  A jury
> trial was held on January 21, 2015, at which time the
> Commonwealth dropped one count of possession of a controlled
> substance.  The [j]ury found Faison guilty of all counts.  On March

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

25, 2015, Faison was sentenced to serve an aggregate period of incarceration of not less than five nor more than ten years. This represented the sentence for [C]ount 1[,] and all remaining counts concurrent to [C]ount 1. On March 31, 2015[,] the [c]ourt granted [t]rial [c]ounsel's [M]otion to withdraw[,] and the public defender's office entered an appearance. The public defender's office filed a post sentence [M]otion on April 1, 2015, which was denied after oral argument …. No direct appeal was filed.

On September 11, 2015, Faison filed his first PCRA [P]etition. On November 17, 2015, Faison prevailed in that [P]etition when [the PCRA court] reinstated Faison's direct appeal rights[, *nunc pro tunc*].

On November 20, 2015, Faison filed an appeal challenging the sufficiency and weight of the evidence. On May 17, 2016, the Superior Court affirmed the conviction. ***Commonwealth v. Faison***, [151 A.3d 1150 (Pa. Super. 2015) (unpublished memorandum)]….

PCRA Court Opinion, 12/31/18, at 1-2 (footnote and internal headings omitted).

This Court summarized what next transpired as follows:

On September 8, 2016, [Faison] filed a timely, *pro se*[,] PCRA [P]etition. The PCRA court then entered an [O]rder granting [Faison] the right to proceed *in forma pauperis* and appointing Gerald Lynch, Esquire (hereinafter "Attorney Lynch")[,] as [Faison's] counsel during the PCRA proceedings.

On December 20, 2016, Attorney Lynch filed a no-merit letter and a request to withdraw as counsel, pursuant to ***Commonwealth v. Turner***, 518 Pa. 491, 544 A.2d 927 (Pa. 1988) and ***Commonwealth v. Finley***, 379 Pa. Super. 390, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). However, and unrelated to Attorney Lynch's no-merit letter and request to withdraw, on December 30, 2016, the PCRA court entered an [O]rder that[] authorized the withdrawal of Attorney Lynch and appointed Ryan Gardner, Esquire (hereinafter "Attorney Gardner")[,] to represent [Faison]. As the PCRA court specified in its [O]rder, the change in counsel was done because Attorney Lynch was "no longer

- 2 -

handling conflict cases" and, as such, Attorney Gardner was "reassigned as conflict counsel to represent [Faison]."

Notwithstanding the change in counsel, on December 30, 2016, the PCRA court acted upon prior counsel's *Turner*/*Finley* letter and entered an [O]rder notifying [Faison] that it intended to dismiss [Faison's] PCRA [P]etition in 20 days, without holding a hearing. Then, on January 25, 2017—with Attorney Gardner not having filed anything in the matter—the PCRA court entered an [O]rder that[] 1) dismissed Appellant's PCRA [P]etition[,] and 2) granted the "[M]otion to withdraw as counsel filed by [Attorney] Lynch." At this time, however, Attorney Lynch was not [Faison's] counsel; rather, Attorney Gardner was [Faison's] counsel of record.

[Faison] filed a timely, *pro se*[,] [N]otice of [A]ppeal on February 16, 2017[,] and [Faison] later filed a *pro se* brief to this Court, notwithstanding the fact that Attorney Gardner was never granted leave to withdraw as [Faison's] counsel….

*Faison*, 175 A.3d 376 (Pa. Super. 2017) (unpublished memorandum at 1-3).

Consequently, on July 13, 2017, this Court vacated the Order of the PCRA court, and remanded the matter for Attorney Gardner to either present Faison's claims appropriately, or to file a *Turner*/*Finley* request to withdraw and no-merit letter. *Id.* (unpublished memorandum at 6-7).

On September 17, 2018, on remand, Attorney Gardner filed a Motion to withdraw from representation and adopted the No-Merit Letter filed by Attorney Lynch. On September 17, 2018, the PCRA court entered an Order granting Attorney Gardner's Motion to withdraw.

On November 5, 2018, the PCRA court issued Notice of its intention to dismiss Faison's PCRA Petition without a hearing. PCRA Court Order, 11/5/18. In response, Faison filed a *pro se* Motion for leave to file an amended PCRA

petition. On December 27, 2018, the PCRA court again issued an Opinion and Order notifying Faison of its intention to dismiss his Motion for leave to file an amended PCRA petition, unless Faison "files an objection to that dismissal within 20 days." PCRA Court Opinion and Order, 12/27/18, at 5 (unnumbered). The PCRA court further advised that its Order would serve as Notice pursuant to Pa.R.A.P. 907. *Id.* at 6 (unnumbered). Faison thereafter filed a *pro se* Motion for Leave to Amend/Objections to 907 Notice. On February 7, 2019, the PCRA court filed an Opinion and Order rejecting the claims raised in Faison's *pro se* Motion to Amend/Objections, and dismissing Faison's PCRA Petition. PCRA Court Opinion and Order, 2/7/19, at 1-5 (unnumbered). Faison filed a Notice of Appeal on February 25, 2019.[2]

Faison presents the following claims for our review:

1. [Whether] PCRA counsel was ineffective for failing to litigate that direct appeal counsel was ineffective for failing to argue that the trial court erred by failing to grant [a] mistrial[,] where the Commonwealth violated [the] rules of discovery by withholding impeachment material regarding its key witness[,] Karen Marie Moyer [("Moyer"), also known as] Karen Pittinger[?]

2. [Whether] PCRA counsel was ineffective for failing to argue that trial counsel was ineffective for failing to request [a] continuance[,] in [the] alternative[,] once the mistrial was denied for [a] discovery violation[?]

3. [Whether] PCRA counsel was ineffective for failing to argue that trial counsel was ineffective for failing to object to the improper remarks by the prosecution in closing arguments and [to]

_____

[2] Notwithstanding, on March 1, 2019, the PCRA court entered a second Order dismissing Faison's PCRA Petition.

- 4 -

> request a curative instruction[,] which denied [Faison] a fair trial[?]

Brief for Appellant at 5.

Faison's presents layered claims of ineffective assistance of PCRA counsel, based on counsel's failure to raise claims of ineffective assistance of trial counsel. Underlying his claim of PCRA counsel's ineffectiveness, Faison first claims that his direct appeal counsel rendered ineffective assistance by not challenging the denial of a mistrial, based upon the Commonwealth's withholding of impeachment material regarding Moyer. *Id.* at 10. Faison asserts that the Commonwealth withheld information regarding Moyer's former surname, "Pittinger."[3] *Id.* Without this information, Faison contends, his counsel was unable to obtain impeachment information regarding Moyer's criminal record. *Id.* According to Faison, "[t]he jury's assessment of [Moyer's] credibility was determinative of [Faison's] guilt or innocence[,]" because she was the Commonwealth's key witness regarding the drug transactions. *Id.* at 10-11. Faison asserts that without Moyer's criminal record, he was unable to determine whether she had violated the terms of her probation with her drug use. *Id.* at 14.

---

[3] Moyer testified that in 2009, she might have used "Pittinger" as her surname, but now she uses her maiden name, which is "Moyer." N.T., 2/23/15, at 43.

Initially, we observe that counsel is presumed to be effective and "the burden of demonstrating ineffectiveness rests on [the] appellant." ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010).

> To be entitled to relief on an ineffectiveness claim, [the petitioner] must prove the underlying claim is of arguable merit, counsel's performance lacked a reasonable basis, and counsel's ineffectiveness caused him prejudice. Prejudice in the context of ineffective assistance of counsel means demonstrating there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. This standard is the same in the PCRA context as when ineffectiveness claims are raised on direct review. Failure to establish any prong of the test will defeat an ineffectiveness claim.

***Commonwealth v. Solano***, 129 A.3d 1156, 1162-63 (Pa. 2015) (citations omitted). If a claim fails under any necessary element of the ineffectiveness test, the Court may proceed to address that element first. ***Commonwealth v. Bennett***, 57 A.3d 1185, 1196 (Pa. 2012).

Our review of the record discloses that Faison failed to establish prejudice resulting from the Commonwealth's failure to disclose Moyer's prior surname. At trial, the jury was informed about Moyer's criminal record, drug addiction, and probation status. Moyer testified that she had pled guilty, in 2008, to theft by deception, forgery and theft by unlawful taking. N.T., 2/23/15, at 41-42. Moyer further testified that she was addicted to crack cocaine from 2000 until her arrest in 2007. ***Id.*** at 56. Moyer explained that she had become a confidential informant while she was on probation following her arrest. ***Id.*** at 57.

Because the jury was told of Moyer's criminal history, drug addiction and probation status, we cannot conclude that the Commonwealth's failure to disclose Moyer's former surname, so that a background check could be conducted, caused Faison prejudice. Because Faison failed to establish prejudice, we cannot grant him relief on this claim. *See Solano*, 129 A.3d at 1162-63.

Faison next claims that his trial counsel rendered ineffective assistance by not requesting a continuance upon the denial of his Motion for a mistrial. Brief for Appellant at 16. In support, Faison argues that the credibility of Moyer was paramount to determining his innocence or guilt. *Id.* at 17. According to Faison, his counsel should have requested a continuance so that an investigation of Moyer's background could be conducted. *Id.* at 18.

However, Faison fails to demonstrate that, but for counsel's failure to seek a continuance, the outcome of the proceeding would have been different. Faison does not identify what information counsel would have obtained had a continuance been granted, which was not already presented during Moyer's trial testimony. As set forth above, Moyer admitted to being on probation, using drugs, and having a criminal record. N.T., 2/23/15, at 41-42, 56-57. Because Faison failed to establish prejudice, he is not entitled to relief on this claim of ineffective assistance of trial counsel. *Solano*, 129 A.3d at 1162-63.

Finally, Faison claims that his trial counsel rendered ineffective assistance by failing to object to the prosecutor's improper remarks during

closing arguments, and for failing to request a curative instruction. Brief for Appellant at 20. Faison explains that at trial, Pennsylvania State Police Trooper John E. Whipple ("Trooper Whipple") testified that he did not attempt to ascertain the owner of the cell phone number, dialed by Moyer, to set up the controlled purchases from Faison. *Id.* at 21. Faison argues that, even though the owner of the cell phone number was not identified, the prosecutor made the following improper statement during closing argument:

> And, in fact, you also heard that the vehicle that [Faison] was driving in [*sic*] was not registered to [Faison]. So[,] would it be unusual for that phone to not be registered to [Faison]? I would argue it would not be.

Brief for Appellant at 21 (citing N.T., 2/23/15, at 197). According to Faison, "[i]t was improper for the prosecutor to argue facts outside the record, unless they are a matter of common public knowledge or matters about which the court may take judicial notice." *Id.* at 21. Faison posits that, because there was no evidence regarding the ownership of the phone number, the prosecutor improperly linked the phone number to Faison in his closing remarks. *Id.* at 22. Faison asserts that his trial counsel rendered ineffective assistance by not objecting to this remark and requesting a curative instruction. *Id.*

As this Court has explained,

> statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial "unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Fletcher*, 580 Pa. 403, 861 A.2d 898, 916 (Pa. 2004) (citation omitted). Like the

defense, the prosecution is accorded reasonable latitude and may employ oratorical flair in arguing its version of the case to the jury. ***Commonwealth v. Williams***, 586 Pa. 553, 896 A.2d 523, 542 (Pa. 2006) (citations omitted).

In addition, a challenged prosecutorial comment must be viewed not in isolation but in the context in which it was made. ***Commonwealth v. Hutchinson***, 611 Pa. 280, 25 A.3d 277, 307 (Pa. 2011). We will not find prosecutorial misconduct from comments based on the evidence or derived from proper inferences. ***Commonwealth v. Chester***, 526 Pa. 578, 587 A.2d 1367, 1377 (Pa. 1991). Our review of prosecutorial remarks and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. ***Commonwealth v. Judy***, 978 A.2d 1015, 1019 (Pa. Super. 2009).

***Commonwealth v. Scott***, 212 A.3d 1094, 1110 (Pa. Super. 2019). In addition, "the prosecutor may fairly respond to points made in the defense closing. Moreover, prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom...."

***Commonwealth v. Hogentogler***, 53 A.3d 866, 878 (Pa. Super. 2012).

At trial, Moyer testified that, for each controlled purchase of narcotics, she contacted Faison by calling him on his cell phone. N.T., 2/23/15, at 45. Each time, Moyer stated, she dialed the same number: 570-279-XXXX.[4] ***Id.*** Trooper Whipple testified that after Faison's arrest, he received a cell phone and hooded sweatshirt. ***Id.*** at 162. These items were recovered by the arresting officers following a "foot pursuit." ***Id.*** at 162. According to Trooper Whipple,

---

[4] We have redacted the number for the purpose of this Memorandum.

I obtained a search warrant for the cell phone that was recovered[,] at which time the most notable thing that I recovered from the phone was that the home number was, in fact, 570-279-[XXXX], the number assigned to that phone.

… [F]rom August 21st[,] there was a call on there to or from [Moyer's] residence to that phone, and right around the time of the controlled buy[,] there was a call … to or from the confidential informant's cell phone to that phone.

Just for a little further clarification, the phone numbers[,] and the reason that they would mean something to me[,] is [that] it's nothing out of the ordinary for me to instruct a confidential informant to keep open communications with a drug dealer, whether they do that from their home phone or whether they do that from their cell phone.

*Id.* at 142. When asked whether he ever had executed a "trace" to determine the owner of the cell phone recovered from Faison, Trooper Whipple testified, "I never attempted to get the owner information or subscriber information from that phone. I simply obtained a search warrant so I could extract the phone number from the phone itself." *Id.* at 197.

During closing arguments, defense counsel referred to the Commonwealth's Exhibit D-1, regarding the cell phone number, as follows:

The last document, D-1, that we introduced, that's what Trooper Whipple got off that 279-[XXXX] phone number. Which, by the way, shouldn't it boggle your mind that they never tried to figure out who that belongs to? There is no subscription information to that phone whatsoever. They have no idea. It could be registered in my name; it could be registered in anybody's name. They have no idea.

Here is the point. There is a phone call allegedly made to [Moyer's] residence. Now, what did she tell you? I never gave him my home phone number. He didn't have that. So how can he be the one calling the residence[,] when she says she never gave him the home phone number? Can't be.

- 10 -

*Id.* at 188.

The prosecutor, during closing arguments, responded to defense

counsel's argument as follows:

[Defense counsel] made a big deal about the phone, and why we wouldn't look to see who it was registered to. Well, why do we need to look to see who it was registered to[?] You were told that [the arresting officer] saw [Faison] running in that sweatshirt. He saw him.

That sweatshirt was then recovered and lo and behold, what's in the pocket? It's the cell phone. And then[,] when Trooper Whipple does the search, it's the cellphone number that [Moyer] was calling; the one that Trooper Whipple observed [Moyer] use.

It really doesn't matter who that phone was registered to. What matters is who was in possession of that phone. The person that was in possession of that phone was [Faison]. He was the one using the phone.

And, in fact, you also heard that the vehicle that [Faison] was driving in [*sic*] was not registered to [Faison]. So would it be unusual for that phone to not be registered to [Faison]? I would argue it would not be.

*Id.* at 196-97.

Thus, in context, the prosecutor's comments constituted a fair

representation of the evidence, and a fair response to the arguments of

defense counsel. ***See Hogentogler***, 53 A.3d at 878. Further, we discern no

prejudice resulting from the prosecutor's statement, in light of the evidence

presented at trial.[5]  **See Solano**, 129 A.3d at 1162-63.  Consequently, Faison

is not entitled to relief on this claim.  We therefore affirm the Order of the

PCRA court.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/27/2019

---

[5] Of particular note, Trooper Whipple confirmed that he personally had witnessed Faison in the presence of Moyer during two of the controlled purchases of narcotics.  **Id.** at 153-55.