J-S21010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RAFAEL GARCIA, | |
| Appellant | No. 3569 EDA 2013 |

Appeal from the PCRA Order December 12, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0804021-2005, CP-51-CR-0804041-2005, CP-51-CR-0804051-2005, CP-51-CR-0807401-2005

BEFORE:  BOWES, JENKINS, and PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                **FILED SEPTEMBER 16, 2015**

Rafael Garcia appeals *pro se* from the December 12, 2013 order denying him PCRA relief at four different criminal action numbers.  We affirm.

Appellant, Carlos Garcia ("Carlos"), and Luis DeJesus operated a residential burglary ring in Northeast Philadelphia from 2001 to 2004.  Gene McFadden was recruited into the criminal enterprise in August 2004, and the co-conspirators started to burglarize commercial properties, including a federal post office.  As to the home burglaries:

> Typically, one of the conspirators would knock on the front door of a home; if no one answered, another would become a lookout while the others entered the home.  They broke windows, smashed doors and disabled alarm systems by disconnecting electric and phone lines.  [Appellant, Carlos, and DeJesus] stole jewelry, cash, cable boxes and other electronics.  They stole DVD players, guns, laptops and collectibles.  The

---

* Retired Senior Judge assigned to the Superior Court.

stolen goods were put into duffel bags, suitcases and pillow cases found inside the burglarized property. The contraband was then stashed at a house belonging to [Appellant's] sister, Jocelyn Garcia. This residence, located at 6119 Edmund Street in Philadelphia, served as *de facto* headquarters for the ring.

Trial Court Opinion, 9/22/14, at 1-2.

While the burglary ring was operating, Appellant had a room at Jocelyn's home on 6119 Edmund Street, where Carlos and DeJesus also lived intermittently. Jocelyn testified that Appellant locked his room. Appellant also had a separate residence in an apartment located on 2100 Tremont Street, Philadelphia.

Police discovered the perpetrators of the string of burglaries through the help of William Linehauser. As noted, until August 2004, Appellant, Carlos, and DeJesus targeted homes. That month, they asked McFadden to help them expand their burglary activities to commercial and governmental properties. McFadden was knowledgeable about how to successfully break into those establishments. McFadden planned and helped execute a burglary that transpired on August 22, 2004 at Wissinoming Post Office located at 5916 Torresdale Avenue. McFadden recruited Linehauser to help in the burglary. During that crime, Appellant, Carlos, DeJesus, McFadden and Linehauser stole an electric stamp meter, $350, and a postal money order worth $100. Police arrested Linehauser on August 30, 2004, after he cashed that money order. Linehauser admitted that he helped with the August 22, 2004 crime, and he agreed to wear a recording device.

In discussions occurring between September 28, 2004, and October 5, 2004, Appellant was taped planning a burglary at Tacony Beer Distributor located at 7829 Torresdale Avenue, with Carlos, DeJesus, McFadden, and Linehauser. After the other criminals became suspicious of Linehauser, he ceased wearing the recording device. On October 20, 2004, McFadden sold Linehauser some tools using pre-recorded money from the Philadelphia police. Those tools were then connected to a previously-reported residential burglary, and the owner of the tools, John Ferry, identified them as his stolen property.

On October 25, 2004, Appellant, Carlos, and McFadden burglarized the Tacony Beer Distributor but did not ask for Linehauser's assistance with this crime. They stole an ATM machine, cigarettes, between $5,000 and $6,000 in cash, and reams of scratch-off lottery tickets. Carlos' girlfriend, Tania Eckert, testified that during the night of October 25, 2004, she observed Carlos and McFadden carrying a large object and Appellant carrying a box of lottery tickets into 6119 Edmund Street. She later observed Appellant and his cohorts pry open an ATM with a screwdriver and crowbar.

After the burglary at Tacony Beer Distributor, police secured search warrants for 6119 Edmund Street, Appellant's Tremont Street apartment, and cars owned by Appellant and Eckert. The search warrants were premised upon information obtained from the recordings made by Linehauser. At 6119 Edmund Street, police discovered the ATM stolen on

October 25, 2004, together with lottery tickets, artwork, large amounts of jewelry and electronics, and drivers' licenses and credit cards belonging to burglary victims. At the Edmund Street location, police also found safes stolen during a September 14, 2004 burglary of Yordy's Deli, which was located at Torresdale Avenue. The safes contained $10,000 in cash when taken.

Appellant's Edmund Street bedroom "was packed from floor to ceiling with stolen goods; some of the items even had the original owner's name on them." *Id*. at 4. Ironically, one of the Philadelphia police detectives who participated in the execution of the search warrant found items stolen during a burglary of her home. Police also found stolen goods in Appellant's apartment at 2100 Tremont Street. Victims of the burglaries were able to identify items as stolen from their homes or businesses. The items seized from 6119 Edmund Street and Appellant's Tremont Street apartment implicated Appellant in the commission of thirty-seven burglaries.

On October 26, 2004, police stopped Eckert while she was driving her car. Carlos was her passenger, and police recovered in Eckert's vehicle a bag containing drivers' licenses and materials belonging to various burglary victims. Eckert and Carlos were arrested and agreed to cooperate with police. Carlos told police that he and Appellant had committed more than thirty burglaries since 2001, and he drove around pointing out some of their targets.

On October 28, 2004, Appellant was arrested outside 2100 Tremont Street. After waiving his ***Miranda*** rights, Appellant confessed to participating in the September 14, 2004 burglary of Yordy's Deli and the October 25, 2004 burglary of Tacony Beer Distributor. He also admitted to committing six reported residential burglaries in Northeast Philadelphia. After executing a written confession, Appellant rode with a police detective and identified properties that he and his accomplices had burglarized.

Four criminal actions were filed against Appellant charging him with a myriad of crimes. Appellant filed a pre-trial motion to suppress his confession and claimed that he told his arresting officers to call his lawyer, Ronald Abel. The police officers involved in Appellant's apprehension and questioning denied that Appellant invoked his right to counsel. The motion to suppress was denied.

The matter proceeded to a jury trial, where, on March 7, 2006, Appellant was convicted of thirty-seven counts each of burglary and receiving stolen property and one count each of corrupt organizations and conspiracy. On May 23, 2006, Appellant, who had a prior record score of three, was sentenced to thirty-five to seventy years imprisonment. We affirmed on direct appeal, ***Commonwealth v. Garcia***, 976 A.2d 1202 (Pa.Super. 2009) (unpublished memorandum), and allowance of appeal was denied on October 27, 2009. ***Commonwealth v. Garcia***, 982 A.2d 1227 (Pa. 2009).

Appellant filed a timely *pro se* PCRA petition on April 19, 2010, counsel was appointed, and counsel filed an amended PCRA petition as well as three supplemental PCRA petitions. After the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to deny the pending petitions without a hearing, counsel moved to withdraw. Appellant then responded to the Pa.R.Crim.P. 907 notice and raised allegations of PCRA counsel's ineffectiveness. Appellant's request for PCRA relief was denied on December 12, 2013, and PCRA counsel filed the present appeal. PCRA counsel then asked for a remand of this matter as Appellant had expressed a desire to represent himself. We remanded and retained jurisdiction, and the court conducted the requisite colloquy pursuant to **Commonwealth v Grazier**, 713 A.2d 81 (Pa. 1998). The PCRA court then allowed Appellant to proceed *pro se*.

Appellant's brief, which is seventy pages in length and does not contain the certification required by Pa.R.A.P. 2135,[1] contains the following issues:

---

[1] That rule states:

> (1) A principal brief shall not exceed 14,000 words and a reply brief shall not exceed 7,000 words, except as stated in subparagraphs (a)(2)-(4). A party shall file a certificate of compliance with the word count limit if the principal brief is longer than 30 pages or the reply brief is longer than 15 pages when prepared on a word processor or typewriter.

Pa.R.A.P. 2135(1).

I. Was trial counsel ineffective in failing to call Melinda Lugo and Ron Able, Esq. at the suppression hearing, and did the PCRA court erred [sic] in concluding that this issue was harmless error and did not warrant evidentiary hearing?

II. Was trial counsel ineffective in failing to file post-sentence motion challenging discretionary aspect of Appellant's sentence, and did PCRA court erred [sic] in concluding that this issue was waived & did not warrant evidentiary hearing?

III. Was appellate counsel ineffective in failing to raise preserved issue of the trial court's refusal to give accomplice charge to jury regarding Tania Eckert, and did PCRA court erred [sic] in concluding that the charge was not supported by record and harmless error?

IV. Was PCRA counsel ineffective in failing to raise appellant's originally filed *pro-se* claim of trial counsel's ineffectiveness re: failure to object and raise in post-verdict motion issues of multiple prosecutorial misconducts, and did the PCRA court erred [sic] in concluding that PCRA counsel had reasonable basis not to raise this issue because misconducts were harmless error?

V. Was PCRA counsel ineffective in failing to raise Appellant's originally filed pro-se claim of trial counsel's ineffectiveness re: failure to object and request factual element be included in inadequate instructions for conspiracy with multiple criminal objectives, and did the PCRA court erred [sic] in concluding that this issue had been previously litigated?

VI. Was PCRA counsel ineffective in failing to raise Appellant's originally filed *pro-se* claim of trial counsel's ineffectiveness re: failure to memorialize and declare the contents of Yamelyn Lugo's testimony at the suppression hearing, and did PCRA court erred [sic] in concluding that this issue was waived?

VII. Was PCRA counsel ineffective in failing to raise Appellant's originally filed claim of trial counsel's overall deficient performance in cumulation [sic], and did the PCRA court erred [sic] in concluding that this issue was meritless?

Appellant's brief at 4-5.

Initially, we outline the applicable principles regarding our review of the PCRA court's determinations herein:

> An appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level.

*Commonwealth v. Freeland*, 106 A.3d 768, 775 (Pa.Super. 2014) (citation omitted).

Appellant's averments pertain to allegations that he received ineffective assistance from prior counsel. Appellant bears a heavy burden in this respect since counsel "is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." *Id*. (citation omitted). There is a three-part test for proving counsel's ineffectiveness:

> To establish trial counsel's ineffectiveness, a petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for the course of action or inaction chosen; and (3) counsel's action or inaction prejudiced the petitioner. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

*Id*. (citation omitted). "Counsel's assistance is **deemed constitutionally effective** once this Court determines that the defendant has not established any one of the prongs of the ineffectiveness test." *Id*. (citation omitted; emphasis in original).

We have carefully reviewed the applicable facts and law and the allegations in the brief. We affirm the denial of PCRA relief on the basis of the comprehensive assessment of Appellant's claims outlined in the September 22, 2014 opinion authored by the Honorable Ramy I. Djerassi. We note that, to the extent that Judge Djerassi considered any issue waived or previously litigated, he also proceeded to address the issue on the merits.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/16/2015

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT
CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | CP-51-CR-0804041-2005 |
| | : | CP-51-CR-0804042-2005 |
| v. | : | CP-51-CR-0807401-2005 |
| | : | CP-51-CR-0804051-2005 |
| Rafael Garcia | : | |

J. DJERASSI                                                    September 22, 2014

## OPINION

Between 2001 and 2004, a burglary ring traumatized Northeast Philadelphia and victimized over thirty family homes and businesses. Defendant Rafael Garcia was a major participant. Acting with search warrants, police seized hundreds of stolen items from these crimes inside residential premises occupied and used by Rafael Garcia. He was essentially caught with the goods.

After a month-long jury trial in February and March 2006 before the late Honorable Thomas E. Dempsey, Garcia was convicted of 37 counts of burglary and theft by receiving stolen property, one count of corrupt organizations, and one count of criminal conspiracy. He was sentenced to an aggregate 35 to 70 years in state prison.

Availing himself of another step in the review process, Rafael Garcia appeals from the dismissal of an Amended PCRA Petition. He raises seventeen claims; none have merit.

## I.    BACKGROUND

Along with Carlos Garcia and Luis DeJesus, Rafael Garcia operated a burglary ring whose crimes shared common characteristics between 2001 and 2004. Typically, one of the conspirators would knock on the front door of a home; if no one answered, another would

1

become a lookout while the others entered the home. They broke windows, smashed doors and disabled alarm systems by disconnecting electric and phone lines. The Garcia's and Dejesus stole jewelry, cash, cable boxes and other electronics. They stole DVD players, guns, laptops and collectibles. The stolen goods were put into duffel bags, suitcases and pillow cases found inside the burglarized property. The contraband was then stashed at a house belonging to Defendant Rafael Garcia's sister, Jocelyn Garcia. This residence, located at 6119 Edmund Street in Philadelphia, served as *de facto* headquarters for the ring.

During a three year conspiracy, Defendant Rafael Garcia kept a room for himself at his sister's home, and Carlos Garcia and Luis DeJesus lived there intermittently.[1] Rafael Garcia also had a separate residential apartment at 2100 Tremont Street. Stolen goods were seized at both locations.

In early August 2004, Gene McFadden ("McFadden") was recruited by conspirators, the Garcia's and Luis DeJesus, to take part in the burglary ring's operations. The group wanted to expand their illegal activities to commercial and government properties. McFadden apparently had relevant skills.

One of McFadden's first acts as a participant was to plan a burglary at the Wissinoming Post Office at 5916 Torresdale Avenue in Philadelphia. McFadden asked William Linehauser to help him, the Garcia's and DeJesus on this job. On August 23, 2004, Carlos Garcia's girlfriend, Taina Eckert, drove Carlos to the 5900 block of Torresdale Avenue. Following Carlos's instructions, she drove away, but not before seeing Carlos standing with several other men outside the Wissinoming Post Office. The next morning, postal clerk Leonard Jromanowski

---

[1] Carlos Garcia is Rafael Garcia's cousin, and Luis DeJesus is the boyfriend of Jocelyn Garcia, Rafael Garcia's sister.

2

discovered the building had been burglarized. An electric stamp meter, $350 in cash, and a postal money order for $100 were missing.

On August 30, 2004, Philadelphia police arrested William Linehauser after he cashed the stolen postal money order. Linehauser quickly admitted that he had helped Carlos Garcia and McFadden break into the Wissinoming Post Office, and he agreed to wear a recording device in cooperation with Philadelphia's ongoing investigation of Defendant and his accomplices/conspirators.

On September 14, 2004, Defendant Rafael Garcia and several of the others broke into Yordy's Deli at 5932 Torresdale Avenue in Philadelphia. They removed two safes containing $10,000 in cash, as well as beer, cigarettes and scratch-off Pennsylvania lottery tickets. An alarm system was dismantled, and phone lines were cut.

After the Yordy's Deli burglary, Linehauser began wearing a wire to meetings with the other members of the burglary ring. Beginning on September 28, 2004 through October 5, 2004, Philadelphia police listened-in on discussions among Rafael Garcia, Carlos Garcia, DeJesus, and McFadden as they planned a burglary of the Tacony Beer Distributor located at 7829 Torresdale Avenue. After October 5, the other conspirators became suspicious of Linehauser who then stopped wearing the wire. However, McFadden sold Linehauser some stolen tools on October 20, 2004, and Linehauser paid for these tools using marked money provided by police. The stolen tools Linehauser bought from McFadden were then brought to Major Crimes, and police connected these tools to an earlier Northeast Philadelphia burglary report. Police asked the owner of the tools, a man named John Ferry, to come in, and Ferry identified the tools as taken in a home burglary he had reported.

3

On October 25, 2004, Carlos Garcia, Defendant Rafael Garcia, and McFadden carried out the Tacony Beer Distributor burglary. Linehauser was not with them. According to court testimony from Carlos Garcia's girlfriend, Taina Eckert, Carlos and DeJesus left 6119 Edmund Street before this burglary. Eckert was spending the night at 6119 Edmund Street when she was woken by a loud bang. Looking out a window, she saw her boyfriend Carlos Garcia and McFadden carrying a large object into 6119 Edmund Street. She also saw Rafael Garcia with them carrying a box of lottery tickets into the house. Later, she saw Rafael Garcia and conspirators prying open an ATM with a screwdriver and a crowbar.

The next morning, October 26, 2004, the owner of Tacony Beer Distributor reported that his ATM was stolen along with large quantities of cigarettes, reams of scratch-off lottery tickets and between $5000 and $6000 in cash.

Based on information heard through the wire worn by Linehauser, police quickly prepared search warrants that day for 6119 Edmund Street, 2100 Tremont Street, 6125 Torresdale Avenue and cars used by Rafael Garcia and Taina Eckert.

Philadelphia police Sgt. Delgrippo, Det. Brennan, Det. Mary Jane Perry, and uniformed officers searched 6119 Edmund Street. They found the stolen ATM from Tacony Beer, safes from Yordy's Deli, lottery tickets, suitcases, artwork, large quantities of jewelry and electronics, four cable boxes, and driver's licenses and credit cards belonging to reported burglary complainants. Rafael Garcia's locked rear room at 6119 Edmund Street was packed from floor to ceiling with stolen goods; some of the items even had the original owner's name on them. Incredible but true, Det. Perry came across stolen items from a burglary of her own house a few months earlier.

4

Executing a search warrant for Rafael Garcia's apartment at 2100 Tremont Street, police again recovered items identified as stolen property. These included costume jewelry, precious jewelry and an Xbox. In a separate search at Gene McFadden's home at 6125 Torresdale Avenue, police recovered tools and a police scanner also identified as stolen.

Bearing a warrant on October 26, 2004, police stopped Taina Eckert while driving her car. Carlos Garcia was with her in the front passenger seat. Inside the car, police found a black bag that contained driver's licenses and other identification paperwork of burglary victims. Both Eckert and Carlos Garcia were brought to the police station where they waived Miranda rights and decided to cooperate with the police investigation of the burglary ring.

Understanding that police had already confiscated stolen booty from 6119 Edmund Street, Carlos Garcia helped police identify the location of many of the burglary ring's targets. Initially, he admitted participation only in the Wissinoming Post Office job and two residences, but he eventually admitted to taking part in many more, including Yordy's Deli and thirteen homes. Later that same day, Philadelphia police Detective Wilson drove Carlos Garcia throughout Northeast Philadelphia, and he identified even more properties that were burglarized by Rafael Garcia and the conspirators.

As described earlier, Taina Eckert told police that on the night of August 23, 2004, Carlos Garcia asked her to drive him to the corner next to the Wissinoming Post Office. She did not know why he wanted to go there, but after about five minutes he returned to her car and told her to drive home. While leaving, she drove past the post office and noticed Carlos Garcia with other men, who she could not identify at the time, standing across the street from the post office. Later, she learned that Carlos Garcia had participated in burglarizing the post office, and the news caused an argument with her boyfriend.

5

Eckert also told police that that in September 2004, she drove Carlos Garcia and McFadden to several residences over the course of one evening. She said she did not know why these stops were made but she confirmed that on several occasions, Carlos Garcia and McFadden returned with large black duffel bags. McFadden put these into the back seat. She said she did not know what was in the bags and never looked inside them.

Eckert testified at trial that on October 24, 2006, she noticed Carlos, Rafael Garcia and DeJesus leaving 6119 Edmund Street and then fell asleep on the living room couch. She was awoken by a loud bang and saw Carlos and McFadden bringing a large object into the house and Defendant carrying a large box of lottery tickets. She woke up again and saw Defendant, Carlos, DeJesus, and McFadden breaking into an ATM with a crowbar in the kitchen, and the next morning, she noticed that the ATM had been pried open. She stated that she did not report them to the police because she was scared and that she was not involved in any of the burglaries.

On October 28, 2004, Defendant Rafael Garcia was arrested outside of 2100 Tremont Street. At the police district, he waived his Miranda rights and confessed to being part of a Northeast Philadelphia burglary ring since 2001. Defendant specifically confessed to taking part in the burglaries at Yordy's Deli, the Tacony Beer Distributor and seven homes.

On November 17, 2004, Carlos Garcia was again driven through Northeast Philadelphia and identified three more properties that had been burglarized by Rafael Garcia, Carlos and the others. He again waived Miranda rights before driving through the Northeast pointing out burglary targets. Overall, Carlos Garcia confirmed that he and Rafael Garcia had taken part in more than thirty burglaries since 2001.

On December 16 and 17, 2004, Philadelphia police invited burglary victims from Northeast Philadelphia to inspect all the goods seized from residential properties associated with

6

this burglary ring. There were two public showings. Victims who identified their own stolen property were interviewed by police who linked the property to unsolved burglary cases. Based on the information gathered from the two showings, new arrest affidavits were prepared and these were included in the consolidated bills filed against Defendant.

## II. PROCEDURAL HISTORY

On January 30, 2006, the Honorable Thomas E. Dempsey held a suppression hearing regarding Defendant's October 28, 2004, confession. The motion was denied the next day, January 31, 2006.

Then, Defendant and co-defendants were tried by jury before Judge Dempsey beginning on February 3, 2006. Defendant was charged with one count of RICO, one count of conspiracy, 54 counts of burglary, and 56 counts of receiving stolen property. On March 7, 2006, following four weeks of testimony, the jury convicted Defendant on 37 counts of burglary and receiving stolen property, one count of RICO, and one count of conspiracy. Defendant was sentenced to an aggregate term of 35 to 70 years of imprisonment. Janine Vinci, Esq. was defense counsel.

Defendant filed a direct appeal challenging sufficiency of the evidence, but the Superior Court affirmed the judgment of sentence on May 11, 2009. The Supreme Court denied *allocator* on October 27, 2009. Mitchell Strutin, Esq. was appellate counsel.

Defendant filed a *pro se* PCRA petition on April 19, 2010 and an amended petition was filed by appointed counsel. This court dismissed the petition without a hearing on December 12, 2013. Defendant filed a timely appeal. John Cotter, Esq. was PCRA counsel.

At the direction of the Superior Court, the PCRA Court held a *Grazier* hearing on March 20, 2014, and Defendant was permitted to proceed *pro se* on appeal. By leave of court, Defendant filed a *pro se* 1925(b) Statement.

## III. STATEMENT OF EVIDENCE

### 1. Testimony at the Suppression Hearing

Detective Thomas Wilson and Defendant testified at the suppression hearing. Detective Wilson testified that on October 28, 2004, he took a statement from Defendant Rafael Garcia after he was read his Miranda rights and waived them. Defendant admitted that he drove himself and his co-defendants to the Tacony Beverage Beer Distributor and acted as the lookout when Carlos Garcia and Luis DeJesus broke into the beer distributor. Stolen items included scratch-off Pennsylvania lottery tickets, an ATM, cigarettes, and beer. The contraband was taken back to 6119 Edmund Street where the three men drank the beer and removed $2800 in cash from the ATM.

According to Det. Wilson, Defendant admitted that he was a look-out during the Yordy's Deli burglary while Carlos Garcia and DeJesus entered the building and stole two safes, cigarettes, and beer. Defendant took part with the others in prying open the safes with a screwdriver and taking more than $4000 in cash. Defendant also told Det. Wilson that he was a lookout and then entered burglarized homes with conspirators at 1936 Lodge Street, 9232 Torresdale Avenue, 11609 Gifford Road, 1801 Rhawn Street, 1835 Lott Street, and 9993 Haldeman Avenue – all in Northeast Philadelphia.

After signing a written confession, Defendant agreed to ride with Detective Wilson through the Northeast to identify properties that he and his co-conspirators had burglarized.

On cross examination, Detective Wilson denied that Defendant asked for a lawyer before signing his written statement and before riding through Northeast Philadelphia identifying places he had burglarized. Detective Wilson also denied that Defendant had specifically asked for Ron Abel, Esq.

8

Testifying at the suppression hearing, Rafael Garcia said he had asked for Mr. Abel as soon as he was arrested outside 2100 Tremont Street on October 28, 2004. Defendant claimed that Detective Brennan told him that if he did not admit to committing the burglaries, police would arrest his wife and charge her with an unspecified crime. He claimed his entire written statement was coerced and denied being given Miranda warnings. He also denied being offered food and drink while in custodial interrogation. Despite previous experience giving statements to police and having been given Miranda warnings before, Rafael Garcia claimed he had no idea that waiving his Miranda rights could mean his statements could be used against him.

2. Testimony Offered by Affidavit at PCRA for Suppression Hearing Claim

As part of his Amended PCRA petition, Rafael Garcia offers three affidavits that he claims should have been considered by Judge Dempsey at the suppression hearing. These affidavits are proffers of PCRA testimony involving Yamelyn Lugo, Melinda Lugo, and Ronald Abel, Esq. Defendant argues that trial counsel Janine Vinci, Esq. was ineffective for not calling these witnesses at the suppression hearing.

Defendant's wife, Yamelyn Lugo, had been scheduled to testify at the suppression hearing but she was withdrawn by defense counsel after discussion on the record. It was determined that Yamelyn Lugo was offering cumulative testimony claiming that Defendant was threatened with her arrest by police.

Yamelyn Lugo's signed Affidavit included proffers for other claims, too: that she heard her husband ask Det. Brennan to speak to Mr. Abel, that Det. Brennan had promised her that Abel would meet them at police headquarters and that she herself was arrested on suspicion of being involved in her husband's burglaries.

9

Melinda Lugo also did not testify at the suppression hearing. She signed an Affidavit with claims similar to those of Yamelyn Lugo. She claims that she overheard Defendant tell Det. Brennan that he wanted Ron Abel, Esq. contacted.

In his Affidavit, Ron Abel, Esq. stated that he was never contacted by anyone regarding Defendant's statements to police.

## IV. CLAIMS ON APPEAL

Defendant brings the following claims on appeal.

### A. Ineffective Assistance Of Counsel Claims Arising From Suppression Hearing Litigation

Defendant raises five claims of ineffective assistance of counsel arising from the suppression hearing on January 30, 2006. Defendant claims that trial counsel was ineffective for failing to call Yamelyn Lugo, Melinda Lugo, and Ronald Abel, Esq. to testify at the hearing.

Defendant then claims that appellate counsel was ineffective for not appealing two claimed errors by the trial court: (1) excluding the above-mentioned witnesses and (2) denying Defendant's suppression motion.

Defendant then raises two more claims – that PCRA counsel was ineffective by not ~~waiving~~ [raising] trial counsel's ineffectiveness by: (1) failing to call the three above-mentioned witnesses and (2) by failing to memorialize the proffered testimony of his wife, Yamelyn Lugo.

Proceeding directly to the merits and leaving the Commonwealth to articulate any waiver or eligibility issues, this Court finds that even if ineffective assistance of counsel were proven, Rafael Garcia cannot show prejudice. Overwhelming evidence established both probable cause for his arrest and guilt beyond reasonable doubt on racketeering, conspiracy and dozens of substantive burglary and theft offenses. Any error based on voluntariness of Rafael Garcia's statement on October 26, 2004, is harmless, because there is no reasonable probability that the

10

jury's verdict would have been different but for trial counsel ineffectiveness causing denial of his suppression motions. *Com. v. Kimball*, 724 A.2d 326 (Pa. 1999). This includes all questions regarding whether Rafael Garcia requested the services of Ron Abel, Esq. after his October 28, 2004, arrest and his general claim that police threatened to arrest his wife if he did not confess.

Police seized 104 stolen items from Defendant Rafael Garcia's locked bedroom inside 6119 Edmund Street, and the Commonwealth published these items to the jury at trial. Some of the seized property had their owners' names on them, including Dorothy Miller's suitcase, Officer Klosz's police nameplate and cable boxes stolen from the homes of burglary complainants Mary Ayasgal and John Robinson. Defendant's sister, Jocelyn Garcia who lived at 6119 Edmund Street, testified that a rear bedroom at 6119 Edmund Street was her brother's and that he kept the room locked. She testified that Defendant was the only person who had access to the room. This testimony was confirmed at trial by Taina Eckert, Carlos Garcia's girlfriend. (N.T. 2/14/06, p. 16-17, 20, 21, 65-66). Adding to the overwhelming weight of evidence against Defendant was more stolen property seized at Defendant's apartment at 2100 Tremont Street. This included two Xboxes belonging to complainants Alex Pozdynakov and Joanne Yerkov, a DVD/VHS player belonging to Norma Morales, and a watch belonging to Dorothy Bathe whose pin collection was recovered from 6119 Edmund Street.

Even as overwhelming evidence renders Judge Dempsey's suppression decisions moot, record review shows that he was reasonable in disbelieving Defendant's claim that he was coerced to confess. Detective Wilson testified at the suppression hearing that he was present at Rafael Garcia's arrest on October 28, 2004, and took his written statement. He told Judge Dempsey that Rafael Garcia did not ask for an attorney, and he gave Miranda warnings before

11

questioning him. He testified the signed waivers on Rafael Garcia's written statements were freely made.

Even if all three witnesses had testified in the manner Defendant now claims by affidavit, again, there is no likelihood the outcome of the trial would have been different. Significantly, Defendant admitted to only eight burglaries in his statement but the physical evidence used against him from 6119 Edmund Street and 2100 Tremont Street implicated him directly in thirty-seven burglaries and thefts.

Generally, to prove ineffective assistance of counsel, a defendant must prove: (1) his underlying claim is of arguable merit; (2) counsel's performance lacked a reasonable basis; and (3) counsel's action or inaction caused him prejudice. *Com. v. Pierce*, 527 A.2d 973, 975-77 (Pa. 1987). Counsel is not ineffective for deciding against calling a witness unless a defendant establishes both the *Pierce* requirements and the following: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness's testimony was so prejudicial as to have denied him a fair trial. *Com. v. Wright*, 961 A.2d 119, 155 (Pa. 2008).

1. Appellate counsel was not ineffective for deciding not to appeal Judge Dempsey's ruling that the cumulative testimony of Yamelyn Lugo was precluded at the suppression hearing.

Defendant claims appellate counsel Mitchell Strutin, Esq. was ineffective for deciding not to appeal Judge Dempsey's ruling precluding testimony by Defendant's wife, Yamelyn Lugo, at the suppression hearing. According to the proffer at the suppression hearing itself, Yamelyn Lugo was prepared to testify that police had "induced" her to call her husband at his job to try to get him to go voluntarily to the local police district for questioning. As her proffered

12

testimony was irrelevant to whether he had been denied his right to counsel at the time he confessed, this issue was not grounds for appeal on the record that Mr. Strutin had at the time he was appellate counsel.

2. Defendant has waived an ineffective assistance claim that PCRA counsel should have preserved an argument that trial counsel was ineffective for not preserving Yamelyn Lugo's proffered suppression testimony on the record.

Defendant also argues that PCRA counsel was ineffective for not claiming that trial counsel should have somehow memorialized Yamelyn Lugo's proffered pretrial suppression testimony. Given that Defendant has never submitted a pretrial written statement from Ms. Lugo, this claim is waived under 42 Pa. C.S. Sec. 9545 (d)(1) ("Where a petitioner requests an evidentiary hearing, the petitioner...shall include any documents material to that witness's testimony). Even in response to this Court's Rule 907 Notice of Intent to Dismiss, Defendant has never submitted such a written statement.

This claim also fails, because as discussed *supra*, the proffer on record did not state an issue material to the voluntariness of Defendant's custodial statements.

3. PCRA counsel was not ineffective for not raising trial counsel's decision not to call witnesses Yamelyn Lugo Garcia, Melinda Lugo, or Ronald Abel, Esq. at the suppression hearing.

Defendant repetitively claims that PCRA counsel was ineffective for not raising trial counsel's ineffectiveness at the suppression hearing. As discussed *supra*, assuming the proffered testimony of Yamelyn Lugo, Melinda Lugo, and Ronald Abel, Esq. were admissible in their entirety, their absence at the suppression hearing did not prejudice Defendant because the evidence presented against him at trial was overwhelming. Even if Defendant's confession had been suppressed on grounds of involuntariness, there is no reasonable probability that the

13

outcome of the proceeding would have been different but for counsel error. *See Com. v. Keaton*, 45 A.2d 1050, 1061 (Pa. 2012) *citing Kimball, supra.*

4. Appellate defense counsel was not ineffective by not raising the meritless issue of the trial court's denial of Defendant's suppression motion.

Along the same lines, Defendant naturally claims that appellate counsel Mitchell Strutin, Esq. was ineffective because he did not appeal the trial court's denial of the suppression motion. For all the reasons already discussed, this claim fails. The suppression motion was properly decided based on the evidence before Judge Dempsey. Even if Defendant's written statement was involuntary and inadmissible, there is no prejudice to the Defendant because overwhelming evidence makes a change in outcome improbable.

5. This court properly denied a new trial.

Finally, Defendant has asked for a new trial on general grounds. For reasons already explained relating to the suppression hearing, this is rejected.

If, however, Defendant is asking for a new trial based on weight of evidence, we note a new trial should be granted only when the verdict is against the clear weight of evidence or there is a serious injustice in the judicial process. *Austin v. Ridge*, 255 A.2d 123, 125 (Pa. 1969); *see also Harman v. Borah*, 756 A.2d 1116, 1122 (Pa. 2000).

Defendant seems to be suggesting that his verdicts would have been against the weight of the evidence if only his confession had been suppressed. This is wishful thinking, as he was caught red-handed with over a hundred identified stolen items in his possession. Coupled with wired conversations directly implicating him in racketeering and conspiracy along with corroborating evidence from many other sources, there is no injustice and no cause for retrial.

**B. Claims Arising From Sentencing**

Defendant raises two sentencing claims.

1. <u>Trial defense counsel was not ineffective at sentencing.</u>

Rafael Garcia argues trial counsel was ineffective when she did not file a motion to reconsider sentence, causing waiver of discretionary review. He argues the sentencing court did not take his individual needs into account and abused its discretion by making certain sentences consecutive to others and sentencing outside sentencing guidelines on certain counts.

At the outset, Defendant's sentencing issues are again waived, this time because he offered no proffer to this PCRA Court that he had requested that trial counsel file a motion to reconsider sentence.

Viewed on the merits, plain reading of the sentencing transcripts shows Judge Dempsey proceeded thoughtfully and fairly. He explained his reasoning, which is balanced between Defendant's individual history, his prospects for rehabilitation, and the terrific harm he inflicted on Northeast Philadelphia. These were brazen offenses affecting dozens of families over three years.

On appeal, a trial court's sentence stands unless there is an abuse of discretion. *Com. v. Griffin*, 804 A.2d 1, 7 (Pa. Super. 2002). "An abuse of discretion is more than just an error in judgment, and on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable or the result of partiality, bias or ill-will." *Com. v. Reynolds*, 835 A.2d 720, 732 (Pa. Super. 2003). As long as its reasons are stated on the record, a sentencing court may deviate from guidelines to take into account "the protection of the public, the rehabilitative needs of the defendant, and the gravity of

15

the particular offenses as it relates to the impact on the life of the victim and the community."
*Com. v. Tirado*, 870 A.2d 362, 366 (Pa. Super. 2005).

On CP-51-CR-0804021-2005, Garcia was sentenced to ten to twenty years imprisonment for burglary and to a concurrent term of two to five years imprisonment for theft by receiving stolen property.

On CP-51-CR-0804041-2005, Garcia was sentenced to five to ten years imprisonment for burglary and to a concurrent term of two to five years imprisonment for theft by receiving stolen property, both of which were to run consecutively to the sentence imposed under CP-51-CR-0804021-2005.

On CP-51-CR-0804051-2005, Garcia was sentenced to five to ten years imprisonment for burglary consecutive to CP-51-CR-0804021-2005 and to a concurrent sentence of two to five years imprisonment for theft by receiving stolen property.

On CP-51-CR-0807401-2005, Garcia was sentenced to a consecutive term of ten to twenty years imprisonment for burglary of Ms. Mary Jane Perry and to a concurrent term of two to five years imprisonment for theft by receiving stolen property; to a consecutive term of five to ten years imprisonment for burglary of Ms. Johnson and to a concurrent term of two to five years imprisonment for theft by receiving stolen property; to a concurrent term of ten to twenty years imprisonment for RICO; to a concurrent term of ten to twenty years for criminal conspiracy; to a concurrent term of five to ten years imprisonment on all remaining burglary counts; and to a concurrent term of two to five years imprisonment on all remaining counts of theft by receiving stolen property.

The aggregate sentence is thirty-five to seventy years. At sentencing, Rafael Garcia had a prior record score of three. The offense gravity score assigned to burglary, a felony of the first

16

degree, was seven. *See* 204 Pa.Code. § 303.15. The standard range sentence for burglary of a single residential property where no one is home is 15-21 months of incarceration, and the aggravated range sentence is 21-27 months of incarceration. *See* 204 Pa.Code. § 303.16. For commercial properties, the applicable sentencing guideline range for a single offense is 6-16 months and the aggravated range is 9-19 months of incarceration. The statutory maximum sentence for burglary is 20 years. *See* 18 Pa.C.S.A. § 3502(c); *see also* 18 Pa.C.S.A. § 1103(1). Taken together, the sentencing court imposed 35 to 70 years on all the burglaries with all other counts effectively running concurrently. Given that Judge Dempsey ran the 10 to 20 year sentences on conspiracy and RICO concurrent to each other and to all other charges, the total sentence was far from the available statutory limit.

Judge Dempsey stated on the record that he considered the sentencing guidelines but was going outside of them based on the severity of the crimes, the number of burglaries, and Defendant's individual involvement and background. (N.T. 5/23/06, p. 124-131). Ironically, if Judge Dempsey had applied standard guideline sentences on each of the thirty-seven burglaries and imposed them consecutively to each other, Rafael Garcia would have been sentenced to even more time. There was no abuse of discretion.

2. The trial court properly denied Defendant's untimely motions to reconsider his sentence and reinstate his right to file an appeal from judgment of sentence.

Defendant claims that the trial court erred by not permitting Defendant to file a motion to reconsider sentence *nunc pro tunc* or to reinstate his right to appeal from the judgment of sentence *nunc pro tunc*.

As discussed above, the sentence was not an abuse of discretion; therefore denial of a motion to permit sentence reconsideration *nunc pro tunc* was not prejudicial.

17

Finally, inasmuch that Defendant litigated a direct appeal in the Superior Court at No. 1797 EDA 2006, his claim that he was improperly denied a right to appeal *nunc pro tunc* is frivolous.

**C. Claims Arising From This Court's Dismissal Of Defendant's PCRA Petition**

Defendant raises three claims arising from this Court's handling of his PCRA.

1. This Court properly dismissed Defendant's PCRA petition without an evidentiary hearing.

Defendant argues this Court erred by dismissing his PCRA Petition without an evidentiary hearing and failed to consider his Rule 907 objections.

Pa. R. Crim. P. 907 explains court procedure when dismissing a PCRA petition without an evidentiary hearing. To give a petitioner time to amend his petition or object to intended dismissal, Rule 907 requires a court to provide twenty days' advance notice of its intent to dismiss. *Com. v. Rykard*, 55 A.3d 1177 (Pa. Super. 2012), *appeal denied*, 619 Pa. 714 (2013). Even if the petitioner objects, the court may still dismiss his petition if no genuine issues of material fact exist. Pa. R. Crim. P. 907(1).

First, this Court dismissed Defendant's PCRA Petition without an evidentiary hearing because there were no genuine issues of material fact.

Second, Defendant claims this Court ignored his objections. This is contradicted by the record. Before formally dismissing his PCRA, this Court stated:

> [Defendant] has filed a Response to Notice of Intent to Dismiss which is essentially a rehash of what has already been raised on your amended PCRA. It has already been reviewed by my chambers, myself and my law clerk, and we find there is no merit to it.

(N.T. 12/13/13, p. 4-5).

18

Third, this Court denied Defendant's request for leave to amend his PCRA Petition because the Objections he filed did not raise any genuine issues of fact or law that needed further review. The purpose of the Rule 907 Notice of Intent to Dismiss is to give defendants a chance to ask for permission to supplement their counseled Amended Petition based on legal or factual issues not raised by PCRA counsel. After receiving a defendant's 907 Objection, the PCRA court standard is to "discern the potential for amendment." *Rykard*, 55 A.3d at 1189. As discussed here, we have considered all issues, cumulative or not, raised by Defendant over a long series of *pro se*, amended, supplemental PCRA Petitions and Rule 907 filings. There are no genuine issues of material fact or law.

2. This Court properly did not allow Defendant to represent himself in the PCRA court after counsel had been appointed and filed amended and supplementary petitions.

Defendant also claims that he should have been permitted to represent himself in the PCRA court. This Court denied Defendant's motion to hold a *Grazier* hearing at the PCRA stage because the request was untimely and would have served only to disrupt the proceedings.

Although a defendant has a right to self-representation, such a request must be timely and unequivocal and not made for the purpose of delay. *Com. v. El*, 977 A.2d 1158 (Pa. 2009); *see also Com. v. Grazier*, 713 A.2d 81 (Pa. 1998). A request is timely when it is made before meaningful proceedings have begun, and the decision to allow self-representation is in a PCRA court's discretion. *El*, 977 A.2d at 1163.

Here, Defendant sought leave to proceed *pro se* for the first time at the Rule 907 hearing for formal dismissal of the PCRA petition. This request came after the counseled filing of an amended petition, four supplemental petitions and *pro se* Rule 907 Objections – well after meaningful proceedings had begun.

19

Now with all the issues reviewed, including his own Objections, this Court granted his *Grazier* request to represent himself on this appeal. This motion was made well before substantive appellate proceedings had begun and Defendant was able to submit his own Rule 1925(b) Statement.

**D. Claims Arising From Jury Charge**

In this context of procedural flexibility, we now address the merits of two jury charge claims Rafael Garcia has raised on PCRA despite previous waiver. First, he alleges that appellate counsel should have raised Judge Dempsey's decision not to give an accomplice charge relating to Taina Eckert, Carlos Garcia's girlfriend. Second, he contends that PCRA counsel was ineffective for not raising a claim concerning the court's criminal conspiracy instruction.

1. No accomplice charge was necessary for Taina Eckert.

First, Defendant claims that appellate counsel Mitchell Strutin, Esq. was ineffective for not raising the Taina Eckert accomplice charge issue on direct appeal, though it had been preserved by trial counsel.

On appeal, the standard of review for a jury charge is whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case. *Von der Heide v. Dep't of Trans.*, 718 A.2d 286, 288 (Pa. 1998). "A corrupt source instruction advises the jury that if it finds that a certain witness who testified against the defendant was an accomplice of the defendant in a crime for which he is being tried, then the jury should deem that witness a 'corrupt and polluted source' whose testimony should be considered with caution." *Com. v. Collins*, 957 A.2d 237, 262 (Pa. 2008). Further, "[t]he instruction is warranted only in cases in which there is sufficient evidence to present a jury question with respect to whether the witness is an accomplice." *Id.*

20

Defendant alleges that Eckert was an accomplice when she drove Carlos Garcia to the post office and left him there before it was burglarized. Defendant also claims she was an accomplice because Eckert was present at home inside 6119 Edmund Street when he carried the Tacony Beer Distributor's stolen ATM machine into the house. Eckert testified she had been awoken by noise when Defendant and others brought the ATM inside.

Eckert never admitted she was an accomplice, nor do the incidents cited by Defendant compel a contrary holding to Judge Dempsey's analysis. On the contrary, while the court declined an accomplice charge for Eckert, he granted one for William Linehauser. (N.T. 2/28/06 (afternoon), p. 59-60). By comparing Judge Dempsey's decisions on Eckert and Linehauser, it is clear that Judge Dempsey applied the law according to the actual testimony in evidence.

Even if Ms. Eckert's testimony had been entirely disregarded by the jury, the effect was harmless due to the overwhelming physical evidence arrayed against him and the conspiracy discussions obtained through William Linehauser's wire. There is no reasonable probability that court error on an accomplice charge relating to Taina Eckert affected the outcome of the trial. Defendant's locked bedroom at 6119 Edmund Street and his apartment at 2100 Tremont Street contained more than one hundred stolen items from the burglaries.

2. The trial court correctly charged the jury on the law of conspiracy.

Second, Defendant argues the trial court incorrectly charged the jury regarding conspiracy without objection. He bootstraps this argument to his own PCRA counsel and claims John Cotter, Esq. was ineffective because he did not raise trial counsel's waiver.

First, this is not the first time that Rafael Garcia has argued error on Judge Dempsey's criminal conspiracy jury charge. On direct appeal through Mr. Strutin, Defendant claimed that a

21

criminal conspiracy conviction based on a "common plan or design" was not justified by the evidence. This claim was rejected:

> "We note that Garcia contends that the Commonwealth prosecuted the burglaries at issue based on the theory that they exhibited a "common scheme, plan or design," and therefore that the challenged convictions were based solely on speculation. Appellant's Brief at 33-39. We reject this argument. As discussed above, the evidence sufficiently supports the conclusion that the burglaries charged in this case were committed by Garcia and/or his co-defendants, and that these four men were parties to a criminal conspiracy to burgle, thus providing a legally sound basis for all of the challenged burglary convictions."

*Commonwealth v. Rafael Garcia*, No. 1797 EDA 2006, n.4 (Superior Court, filed May 11, 2009).

Accordingly, this allegation of error was previously litigated and is ineligible to be grounds for PCRA relief. *See* 42 Pa. C.S. Sec. 9543 (a)(3).

Moreover, Judge Dempsey charged the jury conventionally without reference to common plan or scheme. A conviction for conspiracy, he told the jury, results only if the jury finds an agreement among one or more conspirators to commit burglary and that one or more of the conspirators took an overt act in furtherance of the conspiracy. (N.T. 2/28/06). The relevant bill of information, Charge 264 at CP 0508 0740 1/1, stated the criminal objective was "burglary, theft" and the overt act was noted as "entered another's property." This was proven at trial by overwhelming evidence.

### E. PCRA Counsel Reasonably Decided Not To Raise Issues Relating To Harmless Claims Of Prosecutorial Misconduct At Trial.

Defendant claims that trial counsel's failure to raise a post-verdict motion regarding prosecutorial misconduct at trial should have been raised by PCRA counsel. Specifically, Defendant alleges in his Rule 907 Objection that the Commonwealth improperly asserted: (1) a suitcase with Defendant's name on it was found in the rear bedroom at 6119 Edmund Street, (2)

22

Jocelyn Garcia testified that the aforementioned rear bedroom belonged to Defendant, (3) a driver's license belonging to Luis Piatatsky was found at 6119 Edmund Street, (4) erroneous facts concerning Officer Joan Rudzinski's testimony, and (5) made inflammatory statements about Defendant during opening arguments.

Prosecutorial misconduct requires a reviewing court to determine whether a defendant received a fair trial based on a harmless error standard. *Com. v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009). Errors are harmless when the "evidence of guilt is so overwhelming and the prejudicial effect of the error so insignificant that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict." *Com. v. Story*, 383 A.2d 155 (Pa. 1978). A prosecutor's statements based on the evidence already on record are presumptively not error. *Com. v. LaCava*, 666 A.2d 221 (Pa. 1995).

First, Defendant is correct that no testimony during the trial supports the Commonwealth's assertion that a suitcase with Defendant's name on it was found in the rear bedroom at 6119 Edmund Street. However, the error was harmless, because the evidence that Defendant kept the rear bedroom as his own was proven. Uncontroverted testimony was heard by both Jocelyn Garcia and Taina Eckert that Defendant kept that room as his own.

Second, Jocelyn Garcia *did* testify that the rear bedroom belonged to Defendant. Via stipulation, her testimony was read into evidence, and she stated that Defendant used the rear bedroom at 6119 Edmund Street. (N.T. 2/22/06, morning, p. 36, 41-42). Defendant is correct that Jocelyn never stated that Defendant *lived* at 6119 Edmund Street, but neither did the Commonwealth. The Commonwealth correctly stated that Defendant rented that room.

Third, regarding the home of Luis Piatatsky, when police executed the search warrant for 6119 Edmund Street, Mr. Piatatsky's driver's license was lying out on the kitchen table with his

23

picture burned out. Though Mr. Piatatsky did not testify that his driver's license was stolen, reasonable inferences are permitted at argument.

Fourth, no prosecutorial error occurred when summarizing Officer Joan Rudzinski's testimony. Officer Rudzinski in fact told the jury she believed an attempted burglary had taken at Luis Piatatsky's house and she explained why. (N.T. 2/10/06, p. 64). Luis Piatatsky himself testified that when he inspected his own property after hearing intruder's sounds in his house, he noticed that the screen on his bathroom window had been pushed in from the window frame and was lying in his bathtub. (N.T. 2/6/06, p. 9). If any error was made by attributing the discovery of a pushed screen window to Officer Rudzinski rather than Mr. Piatatsky, clearly the error was harmless.

Fifth, the Commonwealth's remark that Defendant was "in the family business" of committing burglaries was fair argument in the context of this case and the blood relationship between Rafael and Carlos Garcia. A prosecutor has wide latitude during closing argument, and her arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence. *Com. v. Holley*, 945 A.2d 241, 250 (Pa. Super. 2008), *citing Com. v. Paddy*, 800 A.2d 294 (Pa. 2002).

For the above reasons, there was no prosecutorial misconduct and no ineffectiveness by subsequent counsel for declining to make the claim.

### F. PCRA Counsel Reasonably Decided Not To Raise An "Overall Deficient Performance In Cumulation" Catch-All Claim Against Trial Counsel.

Finally, Rafael Garcia raises the general claim that PCRA counsel was ineffective by not raising trial counsel's "overall deficient performance in cumulation." In support, Defendant cites all of the previously reviewed claims of ineffective assistance of trial counsel, adding only that trial counsel was sleeping during the sentencing hearing.

24

However, the following is on the record:

> THE COURT: Ms. Vinci, you're not permitted to sleep in the courtroom. If you need to sleep, you may step out.

> MS. VINCI: No, Your Honor. My neck was bothering me. Excuse me, Your Honor.[2]

(N.T. 5/23/06, 108).

As all other claims of ineffective counsel have been addressed above as being meritless, this claim of "cumulation" is duplicative and rejected.

## V. CONCLUSION

For the foregoing reasons, Defendant raises no meritorious claims on appeal. All judgments should respectfully be affirmed.

By the Court,

Ramy I. Djerassi, J.

---

[2] Although Ms. Vinci was the attorney responding to Judge Dempsey, the transcript misprints the respondent as being Mr. McCullough but the dialogue is reported here correctly for appellate review.

25